UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AUSTIN SANCTUARY NETWORK FREE
IMMIGRATION PROJECT, *et al.*,

                   Plaintiffs,

         -v-

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT, *et al.*,

                   Defendants.

20 Civ. 1686 (LJL)

---

**DEFENDANT UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT**

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
Counsel for Defendants
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2633
Email: tara.schwartz@usdoj.gov

TARA SCHWARTZ
Assistant United States Attorney
— Of Counsel —

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................... 1

    A. The FOIA Request and ICE's Response to the FOIA Request ..................... 1

    B. ICE's Initial Searches ................................................................................ 4

    C. ICE's Supplemental Searches .................................................................... 5

    D. The Instant Litigation and ICE's Productions .......................................... 6

ARGUMENT ....................................................................................................... 7

    A. Standard of Review .................................................................................. 7

    B. ICE's Searches for Records Were Reasonable and Adequate ..................... 8

    C. ICE Has Properly Withheld Information Protected by the Attorney-Client, Attorney Work Product and Deliberative Process Privileges Pursuant to Exemption 5............ 12

        1. ICE Properly Withheld Records Pursuant to the Attorney-Client Privilege ...........................................................................................13

        2. ICE Properly Withheld Records Pursuant to the Attorney Work Product Privilege ...........................................................................16

        3. ICE Properly Withheld Records Pursuant to the Deliberative Process Privilege ...........................................................................18

            i. The Deliberative Process Privilege .................................................... 18

            ii. ICE Properly Withheld Draft Documents Pursuant to the Deliberative Process Privilege........................................................... 21

            iii. ICE Properly Withheld in Part Predecisional, Deliberative Internal Discussions, Deliberations, and Recommendations .......................... 23

            iv. Release of the Documents Withheld Pursuant to Exemption 5 Would Result in Reasonably Foreseeable Harm ........................................... 25

    D. ICE Properly Withheld Law Enforcement Records Pursuant to Exemption 7(E)...... 27

    E. ICE Properly Withheld Personal Information Pursuant to Exemptions 6 and 7(C) ... 30

    F. ICE Properly Withheld Records Subject to Exemption 3 .......................... 34

    G. Defendant Has Properly Segregated Releasable Portions of the Redacted Records .. 35

CONCLUSION ................................................................................................... 36

## TABLE OF AUTHORITIES

**Cases**

*A. Michael's Piano, Inc. v. Fed. Trade Comm'n*, 18 F.3d 138 (2d Cir. 1994) ............................ 17

*Access Reports v. U.S. Dep't of Just.*, 926 F.2d 1192 (D.C. Cir. 1991) ...................................... 20

*ACLU v. U.S. Dep't of Just.*, 210 F. Supp. 3d 467 (S.D.N.Y. 2016) ............................................. 17

*Adamowicz v. Internal Revenue Serv.*, 552 F. Supp. 2d 355 (S.D.N.Y. 2008) .............................. 9

*Ahmed v. U.S. Citizenship & Immigration Serv.*, No. 11-6230, 2013 WL 27697 (E.D.N.Y. Jan. 2, 2013) ............................................................................................................................................. 30

*Allard K. Lowenstein Int'l Project v. U.S. Dep't of Homeland Sec.*, 626 F.3d 678 (2d Cir. 2010) ...................................................................................................................................... 27, 28, 29

*Am. C.L. Union v. U.S. Dep't of Def.*, 389 F. Supp. 2d 547 (S.D.N.Y. 2005) ............................. 31

*Am. Fed'n of Gov't Emp., AFL-CIO v. Dep't of Army*, 441 F. Supp. 1308 (D.D.C. 1977) .......... 24

*Amnesty Int'l USA v. Cent. Intel. Agency*, 728 F. Supp. 2d 479 (S.D.N.Y. 2010) ................. 11, 35

*Asian Law Caucus v. U.S. Dep't of Homeland Sec.*, No. 08-00842, 2008 WL 5047839 (N.D. Cal. Nov. 24, 2008) ............................................................................................................................... 29

*Assadi v. U.S. Citizenship & Immigr. Servs.*, No. 12 Civ. 1374 (RLE), 2015 WL 1500254 (S.D.N.Y. Mar. 31, 2015) ................................................................................................................ 18

*Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274 (2d Cir. 2009) ........................................... 32

*Associated Press v. U.S. Dep't of Justice*, No. 06 Civ. 1758 (LAP), 2007 WL 737476 (S.D.N.Y. Mar. 7, 2007) .................................................................................................................................. 31

*Austin Sanctuary Network et al. v. Gaynor et al.*, No. 21 Civ. 164 (ZMF) (D.D.C. Jan. 19, 2021) ......................................................................................................................................................... 18

*Bernegger v. EOUSA*, 334 F. Supp. 3d 74 (D.D.C. 2018) ............................................................. 34

*Brennan Ctr. for Just. at New York Univ. Sch. of L. v. U.S. Dep't of Just.*, 697 F.3d 184 (2d Cir. 2012) ............................................................................................................................................... 13

*Brown v. Fed. Bureau of Investigation*, 873 F. Supp. 2d 388 (D.D.C. 2012) .............................. 29

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994) ................................................... 8, 10

*Cause of Action Institute v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336 (D.D.C. 2018) ............. 26

*Cent. Intel. Agency v. Sims*, 471 U.S. 159 (1985) ................................................................... 7, 35

*Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) .............. 14, 19

*Color of Change v. U.S. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447 (S.D.N.Y. 2018)20, 22, 27

*Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168 (2d Cir. 2014) .................................... 30

*Delaney, Migdail & Young, Chartered v. I.R.S.*, 826 F.2d 124 (D.C. Cir. 1987) ........................ 18

*Dep't of State v. Wash. Post Co.*, 456 U.S. 595 (1982) ................................................................ 31

*Elec. Frontier Found. v. U.S. Dep't of Just.*, 892 F. Supp. 2d 95 (D.D.C. 2012).........................25

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100 (D.D.C. 2005) ........13

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46 (D.D.C. 2015)......16

*Ferguson v. Fed. Bureau of Investigation*, No. 89 Civ. 5071 (RPP), 1995 WL 329307 (S.D.N.Y. June 1, 1995)........................................................................................................................ 8

*Fitzgibbon v. Cent. Intel. Agency*, 911 F.2d 755 (D.C. Cir. 1990) ..............................................32

*Fox News Network, LLC v. U.S. Dep't of The Treasury,* 739 F. Supp. 2d 515 (S.D.N.Y. 2010) 16, 25

*Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356 (S.D.N.Y. 2002) ......................................... 9

*Gonzalez v. U.S. Citizenship & Immigr. Servs.*, 475 F. Supp. 3d 334 (S.D.N.Y. 2020) ..............10

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999)..................................... 9, 19, 20

*Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279 (2d Cir. 1999) ......................................... 8

*Hickman v. Taylor*, 329 U.S. 495 (1947)......................................................................................17

*Hopkins v. U.S. Dep't of Hous. and Urb. Dev.*, 929 F.2d 81 (2d Cir. 1991) ...................12, 19, 20

*Human Rights Watch v. U.S. Dep't of Justice Fed. Bureau of Prisons*, No. 13 Civ. 7360, 2015 WL 5459713 (S.D.N.Y. Sept. 16, 2015)......................................................................................28

*Ibrahim v. U.S. Dep't of State*, 311 F. Supp. 3d 134 (D.D.C. 2018) ...........................................29

*ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F.Supp.2d 130 (D.D.C. 2008)...................25

*In re County of Erie*, 473 F.3d 413 (2d Cir. 2007) ................................................................ 13, 14

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989) ........................................................7, 8

*Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19 (D.D.C. 2000)........................... 9

*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 432 F.3d 366 (D.C. Cir. 2005)..............................17

*Lead Indus. Ass'n v. OSHA,* 610 F.2d 70 (2d Cir. 1979 .............................................................22

*Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Adm.*, 610 F.2d 70 (2d Cir. 1979)......36

*Long v. Off. of Pers. Mgmt.*, 692 F.3d 185 (2d Cir. 2012)............................................................ 8

*Martin v. U.S. Dep't of Justice*, 488 F.3d 446 (D.C. Cir. 2007)..................................................... 7

*Maynard v. Cent. Intel. Agency*, 986 F.2d 547 (1st Cir. 1993).....................................................10

*McKinley v. Bd. of Governors of Fed. Res. Sys.*, 849 F. Supp. 2d 47 (S.D.N.Y. 2012) ...............13

*Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986) ...................................................................... 9

*Miller v. U.S. Dep't of Just.*, 872 F. Supp. 2d 12 (D.D.C. 2012)..................................................29

*Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224 (D.C. Cir. 2008)....................... 30, 31

*N.Y. Times Co. v. U.S. Dep't of Defense*, 499 F.Supp.2d 501 (S.D.N.Y. 2007).........................24

*N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100 (2d Cir. 2014) ......................................... 9

*N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012) ...................... 7, 8

*N.Y. Times Co. v. U.S. Dep't of Justice*, 915 F. Supp. 2d 508 (S.D.N.Y. 2013) ........................... 8

*N.Y. Times Co. v. U.S. Dep't of Justice*, 939 F.3d 479 (2d Cir. 2019) ........................................ 17

*N.Y. Times Co. v. U.S. Dep't of State*, No. 19 Civ. 645 (JSR), 2019 WL 2994288 (S.D.N.Y. July 9, 2019) ........................................................................................................... 16

*N.Y. Times Co. v. U.S. Dep't of State*, No. 19-cv-645 (JSR), 2019 WL 2994288 (S.D.N.Y. July 9, 2019) ........................................................................................................................ 26

*Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, No. 17 Civ. 5928 (JMF), 2019 WL 3338266 (S.D.N.Y. July 25, 2019) ........................................................................................... 22, 25

*Nat'l Council of La Raza v. U.S. Dep't of Justice*, 339 F. Supp. 2d 572 (S.D.N.Y. 2004) .... 20, 22

*Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ..................... 19, 20, 24

*Nat'l Sec. Archive v. Cent. Intel. Agency,* 752 F.3d 460 (D.C. Cir. 2014) .................................. 22

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ....................................................... 9

*Peletier v. Fed. Bureau of Investigation*, 219 Fed. App'x 30 (2d Cir. 2007) .............................. 32

*Public Emps. for Env't. Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195 (D.C. Cir. 2014) ............................................................................................................ 28

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168 (1975) .............................. 19

*Reporters Comm. For Freedom of the Press v. Fed. Bureau of Investigation*, No. 15 Civ. 1392 (RJL), 2020 WL 1324397 (D.D.C. Mar. 20, 2020) ....................................................... 26

*Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62 (D.D.C. 2018) ......................................... 25

*SafeCard Servs., Inc. v. Sec. and Exch. Comm'n*, 926 F.2d 1197 (D.C. Cir. 1991) .................... 32

*Schaeffler v. United States*, 806 F.3d 34 (2d Cir. 2015) ............................................................. 17

*Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592 (S.D.N.Y. 2018) ............................................ 25

*Shapiro v. U.S. Dep't of Justice*, 37 F. Supp. 3d 7 (D.D.C. 2014) ............................................ 27

*Shurtleff v. U.S. Env. Prot. Agency*, 991 F. Supp. 2d 1 (D.D.C. 2013) ...................................... 34

*Sorin v. U.S. Dep't of Just.*, 758 F. App'x 23 (2d Cir. 2018) ...................................................... 18

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007) .............................................. 35

*Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607 (D.C. Cir. 1997) .................................... 14

*Taxation With Representation Fund v. IRS*, 646 F.2d 666 (D.C. Cir. 1981) ............................... 24

*The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345 (E.D.N.Y. 2009) .............. 36

*Tigue v. U.S. Dep't of Justice*, 312 F.3d 70 (2d Cir. 2002) .................................................... 12, 22

*Tran v. U.S. Dep't of Just.*, No. 01-0238, 2001 WL 1692570 (D.D.C. Nov. 20, 2001) .............. 28

*U.S. Dep't of Def. v. Fed. Lab. Rel. Auth.*, 510 U.S. 487 (1994) ................................................ 31

*U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595 (1982) .............................................. 30

*U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) ............. 7

*Wadhwa v. U.S. Dep't of Veterans Affs.*, 707 F. App'x 61 (3d Cir. 2017) .................................. 22

*Wilner v. Nat'l Security Agency*, 592 F.3d 60 (2d Cir. 2009).................................................. 8, 35

*Wolfe v. U.S. Dep't of Health & Human Servs.*, 839 F.2d 768 (D.C. Cir. 1988) ........................ 19

**Statutes**

5 U.S.C. § 552...............................................................................................................passim

8 U.S.C. § 1367 .......................................................................................................................... 35

Immigration and Nationality Act, 8 U.S.C. § 1324d ...................................................... 1, 2, 3, 10

**Other Authorities**

Exec. Order No. 13768, 82 Fed. Reg. 8799 (Jan. 30, 2017)................................................... 2, 12

Exec. Order No. 13993, 86 Fed. Reg. 7051 (Jan. 25, 2021)......................................................... 2

**Rules**

Fed. R. Civ. P. 26....................................................................................................................... 17

Fed. R. Civ. P. 56......................................................................................................................... 8

Local Rule 56.1............................................................................................................................ 8

## PRELIMINARY STATEMENT

Defendant the United States Immigration and Customs Enforcement ("ICE"), respectfully submits this memorandum of law in support of its motion for summary judgment in this action brought by Plaintiffs Austin Sanctuary Network, Center for Constitutional Rights, Free Migration Project, and Grassroots Leadership (collectively, "Plaintiffs") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.[1]

This action concerns a FOIA request directed to ICE, the Department of Treasury ("Treasury"), and the Executive Office of Immigration Review ("EOIR") (collectively, "Defendants") seeking records relating to any and all fines and penalties imposed on individuals, including immigrants taking "sanctuary" in churches, places of worship, or elsewhere, pursuant to the Immigration and Nationality Act ("INA") § 274D, 8 U.S.C. § 1324d.  As explained further below and in the declaration accompanying this memorandum, ICE conducted a reasonable search for responsive records, and has properly withheld information in the challenged records pursuant to FOIA Exemptions 3, 5, 6, 7(c), and 7(e). ICE is therefore entitled to summary judgment.

## BACKGROUND

### A.  The FOIA Request and ICE's Response to the FOIA Request

On September 11, 2019, Plaintiffs submitted a FOIA request to ICE, Treasury, and EOIR seeking various categories of information relating to the federal government's initiative of imposing civil fines on individuals, particularly individuals taking "sanctuary."  (*See* Declaration of Fernando Pineiro ("Pineiro Decl.") Ex. B (the "Request")).  Such civil fines initiative arose from Executive Order 13768, signed by President Trump on January 25, 2017, titled "Enhancing

---

[1]      While Plaintiffs also sued the Department of Treasury and the Executive Office of Immigration Review, they are not pursuing summary judgment with respect to these two defendants.  (*See* Dkt. No. 42 and 2, n.3).

Public Safety in the Interior of the United States." Exec. Order No. 13768, 82 Fed. Reg. 8799 (Jan. 30, 2017). (*See* Pineiro Decl. ¶ 55). In relevant part, Executive Order 13768 targeted "sanctuary jurisdiction" non-compliance with immigration enforcement measures by deeming them ineligible to receive federal grants, except as necessary for law enforcement purposes. *See* 82 Fed. Reg. 8799 at § 9(a). It also required the Secretary of Homeland Security to issue guidance and promulgate regulations to ensure the assessment and collection of civil fines and penalties on aliens unlawfully present in the United States. *See id*. at § 6.[2]

Plaintiffs' FOIA request to ICE sought the following categories of records:

1) Any and all records relating to current policies, procedures, guidelines, instructions, or other materials concerning when and how civil fines and penalties under INA § 274D, 8 U.S.C. § 1324d, are enforced on individuals who are alleged to have a final administrative removal order, including but not limited to immigrants taking sanctuary.

2) Any and all guidelines, schedules, instructions, or other records concerning fee calculations, fee amounts, or other monetary information ICE is allowed to impose on individuals pursuant to INA § 274D, 8 U.S.C. §1324d, including but not limited to immigrants in sanctuary.

3) Any communications between ICE officials and officials of local or federal agencies regarding fines, fees, and/or penalties pursuant to INA § 274D, 8 U.S.C. §1324d for individuals, including but not limited to immigrants taking sanctuary, between January 2013 and the date of this Request.

   a. This includes any communications between ICE personnel or between ICE personnel and other federal agencies relating to the drafting, updating, and/or creation of ICE Form I-79B "Notice of Intention to Fine Under Section 274D of the Immigration and Nationality Act."

4) Any data, charts, statistics, or lists collected by ICE regarding individuals who have been sent notices of fines under INA § 274D, 8 U.S.C. §1324d, including but not limited to immigrants taking sanctuary.

5) The number of individuals who ICE has imposed fees, fines, and/or penalties pursuant to INA § 274D, 8 U.S.C. §1324d, including but [not] limited to

---

[2] Executive Order 13768 was revoked by President Biden on January 20, 2021, in an executive order titled "Revision of Civil Immigration Enforcement Policies and Priorities." Exec. Order No. 13993, 86 Fed. Reg. 7051 (Jan. 25, 2021).

immigrants taking sanctuary, broken down by date, country of origin, state/city of residence, and gender.

6) The number of individuals who have been sent ICE Form I-79B "Notice of Intention to Fine under Section 274D of the Immigration and Nationality Act" broken down by date, country of origin, state/city of residence, and gender.

7) Any data, charts, statistics, lists, or records collected by ICE regarding individuals taking sanctuary and/or the churches, places of worship, and other locations where individuals are taking sanctuary.

(Request at 2).

Upon receipt of the Request, the ICE FOIA Office, based on its experience and knowledge regarding the responsibilities of ICE's various program offices, identified ICE's Office of Enforcement and Removal Operations ("ERO") and ICE's Office of Policy ("ICE Policy") as likely to possess responsive records.  (Pineiro Decl. ¶ 27; *see id*. at ¶¶ 17-19).  ERO is the unit of ICE that, *inter alia*, (i) oversees programs and conducts operations to identify and apprehend removable aliens, detain these individuals when necessary, and remove illegal aliens from the United States; and (ii) manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release.  (*Id*. at ¶ 24).  ICE Policy is the unit of ICE that, *inter alia*, (i) identifies, develops, and communicates agency priorities and policies to internal and external stakeholders; and (ii) executes strategic policy initiatives on behalf of ICE leadership that advance ICE's priorities, including projects that require coordination with the Department of Homeland Security ("DHS") headquarters and interagency partners; identifies, develops, drafts, and communicates agency priorities and policies; and oversees the ICE regulatory process.  (*Id*. at ¶ 26).  Given the ICE FOIA Office's assessment that ERO and ICE Policy would be the ICE program offices likely to have responsive records, the ICE FOIA Office forwarded the Request to its points of contact in ERO's

Information Disclosure Unit and at ICE Policy and tasked them with conducting searches for responsive records.[3] (*Id*. at ¶¶ 28, 32).

## B. ICE's Initial Searches

ERO tasked the specific divisions that were most likely to have responsive records, namely ERO Policy, ERO Field Operations, and ERO Enforcement, with conducting searches. (Pineiro Decl. ¶ 28). A management and program analyst within ERO Policy conducted a search of the ERO Policy Library and the ICE Policy Manual using search terms "1324d," "274d," and "10088.1." (*Id*. at ¶ 29). A unit chief within ERO Field Operations conducted a search of the Field Operations SharePoint and the Field Operations hard drive using the search terms "sanctuary case" and "sanctuary." (*Id*. at ¶ 30). The Enforcement Program Manager within ERO Enforcement conducted a search of their computer hard drives and email using the search terms "form," "directive," "instructions," "appendix," "guidance," "questionnaire," "numbers," "fines,"

---

[3]     ICE records are maintained by leadership offices and/or within ICE directorates. Program offices within the leadership office and the ICE directorates are staffed with a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the ICE FOIA Office. (Pineiro Decl. ¶ 18). Each POC has a detailed knowledge concerning the operations of their particular program office. (*Id*.). Accordingly, when the ICE FOIA Office receives a FOIA request, its first step is to identify, based on its experience and knowledge of ICE's program offices, which program offices within ICE, if any, are likely to possess records responsive to that request and to initiate searches within those program offices. (*Id*. at ¶ 19). Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the office POCs with a copy of the FOIA request and instructs them to conduct a search for responsive records. (*Id*.). The POCs then review the FOIA request, along with any case-specific instructions that may have been provided by the ICE FOIA Office and based on their experience and knowledge of the program offices' practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that are likely to have responsive records. (*Id*.). Per the ICE FOIA Office's instructions, the individual(s) and component office(s) are directed to conduct searches of their file systems, including paper files and electronic files, which, in their judgment, based on their knowledge of the manner in which they routinely keep records, would likely be the files to contain responsive records. (*Id*. at ¶ 20). Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn provides the records to the ICE FOIA Office. (*Id*. at ¶ 21). The ICE FOIA Office then reviews the collected records for responsiveness, processes the records, and applies the appropriate withholdings. (*Id*.).

and "sanctuary" and their email using the search terms "form," "directive," "instructions," "questionnaire," "fines," and "sanctuary." (*Id.* at ¶ 31).

ICE Policy conducted a search of the ICE Policy Manual and ICE Policy Shared Drive using the search terms "274D," "I-79B," "1324d," and "sanctuary." (*Id.* at ¶ 32).

## C. ICE's Supplemental Searches

After the filing of the instant action, the ICE FOIA Office determined that additional searches for responsive records should be conducted by ERO and the Office of the Principal Legal Advisor ("OPLA"). (*See* Pineiro Decl. ¶ 33). OPLA is the unit of ICE that, *inter alia*, (i) serves as the exclusive representative of DHS in immigration removal proceedings before the Executive Office for Immigration Review ("EOIR"), (ii) litigates all removal cases, and (iii) provides legal advice and prudential counsel to ICE personnel on their customs, criminal, and immigration law enforcement authorities, among other things. (*Id.* at ¶ 25).

ERO conducted the following supplemental searches: (i) the Executive Associate Director of ERO searched his email using the terms "civil," "fines," "INA §274(D), "8 U.S.C. § 1324d," "sanctuary," "ICE Form I-79B," and "Notice of Intention to fine"; (ii) the Deputy Executive Associate Director of ERO searched his computer and email using the terms "I-79B," "Notice of Intention," "Civil Fines," "8 USC § 1324d," "INA § 274D," and "Sanctuary"; and (iii) the Chief of Staff of ERO searched his laptop and email using the terms "civil fines" and "274 D." (*Id.* at ¶¶ 35-37).

OPLA conducted the following searches: (i) the Executive Deputy Principal Legal Advisor and the Deputy Principal Legal Advisor for Enforcement and Litigation searched their emails using the term "274D"; the Deputy Principal Legal Advisor for General and Administrative Law manually searched relevant three-ring binders and folders and also searched his email using the terms "274," "274D," "1324d," and "fine"; (iii) the Deputy Chief of the Revenue Recovery Unit

within Commercial and Administrative Law Division searched his computer and email using the terms "civil penalties," "civil fines," and "274D"; and (iv) three associate legal advisors within the Commercial and Administrative Law Division searched their emails using relevant search terms. (*Id.* at ¶¶ 39-45).

## D. The Instant Litigation and ICE's Productions

As a result of these searches, ICE reviewed a total of 13,342 pages of records, of which it determined 6,574 were responsive. (*See* Pineiro Decl. ¶ 12). In sixteen productions, ICE released 1,150 pages in full, released 2,183 pages in part, and withheld 3,241 pages. (*Id.*).[4] Plaintiffs have now challenged the withholdings on 330 documents that ICE either withheld full or in part. (*See* Dkt. No. 42 (setting forth the confines of the challenges that Plaintiffs would raise at summary judgment)).

As described in the Pineiro Declaration, and as explicated by the *Vaughn* Index, information was withheld from these records pursuant to the exemptions contained in 5 U.S.C. §§ 552(b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E), referred to as Exemptions 3, 5, 6, 7(C), and 7(E), respectively. *First*, ICE withheld certain documents, namely draft documents, legal advice, deliberative discussions and proposals, as exempt from disclosure pursuant to the attorney-client, attorney work product, and deliberative process privileges of Exemption 5.[5] (*See* Pineiro Decl.

---

[4]    ICE subsequently determined that two documents (constituting 11 pages), which ICE withheld are not responsive to Plaintiff's request.

[5]    Moreover, with respect to any Priority Documents that were withheld in full as a result of being draft documents, the parties have agreed that ICE need only Vaughn those documents to assert exemptions pursuant to 5 U.S.C. § 552(b)(5)—specifically, their draft nature and, if applicable, that they are protected by the attorney-client/work produce privileges. In other words, through this summary judgment motion, ICE is defending the entirety of its withholdings with respect to the Priority Documents, except for those withheld in full as a result of being draft documents. As to that subset, ICE is only defending its redactions on the basis of 5 U.S.C. § 552(b)(5).

Further, on August 27, 2021, the parties agreed, by email, that Plaintiffs are not challenging the withholding of three draft documents for which a final version of the document was produced to Plaintiffs and three draft rules for which a final version was published in the Federal Register.

¶¶ 52-74).  *Second*, ICE contends that certain records containing information regarding sensitive law enforcement data and systems and records containing the procedural aspects of ICE's imposition of civil fines are subject to law enforcement privilege afforded by Exemption 7(E).  (*See id*. at ¶¶ 91-94).  *Third*, ICE contends that certain records, containing personally identifiable information of both federal employees and third parties, are exempt from disclosure pursuant to the privacy protections afforded by Exemptions 6 and 7(C).  (*See id*. at ¶¶ 75-90).  *Fourth*, ICE contends that portions of two pages of records were properly withheld pursuant to Exemption 3.  (*See id*. at ¶¶ 49-51).  For the reasons explained below, ICE is entitled to summary judgment on the adequacy of its search and its withholdings.

## ARGUMENT

ICE's detailed declaration establishes that ICE conducted reasonable searches for responsive documents.  They further logically and plausibly explain why the withheld portions of the responsive documents are exempt from disclosure under FOIA Exemptions 3, 5, 6, 7(C), and 7(E).  Accordingly, ICE is entitled to summary judgment.

### A.  Standard of Review

FOIA represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'"  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989); *N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012).  Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest," *Cent. Intel. Agency v. Sims*, 471 U.S. 159, 166-67 (1985), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions," *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *see also Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 453 (D.C. Cir. 2007) ("Recognizing . . . that the public's right to information was not absolute

and that disclosure of certain information may harm legitimate governmental or private interests, Congress created several exemptions to FOIA disclosure requirements.") (internal quotations omitted); *John Doe Agency*, 493 U.S. at 152 (FOIA exemptions are "intended to have meaningful reach and application").

Most FOIA actions are resolved by summary judgment. *See, e.g.*, *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); *N.Y. Times Co. v. U.S. Dep't of Justice*, 915 F. Supp. 2d 508, 531 (S.D.N.Y. 2013). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA cases, the government meets its burden of demonstrating that it properly withheld documents if it produces declarations "giving reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812.

An agency's declarations in support of its withholdings are "accorded a presumption of good faith." *Id.*; *see also Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279, 295 (2d Cir. 1999). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner v. Nat'l Security Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (citation and internal quotation marks omitted).[6]

## B. ICE's Searches for Records Were Reasonable and Adequate

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate." *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quoting *Carney*, 19 F.3d at 812). A search is judged by the efforts

---

[6] ICE has not submitted a Local Rule 56.1 statement, as "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment," and a Local Rule 56.1 statement "would be meaningless." *Ferguson v. Fed. Bureau of Investigation*, No. 89 Civ. 5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996); *N.Y. Times*, 872 F. Supp. 2d at 314 (noting Local Civil Rule 56.1 statement not required in FOIA actions in this Circuit).

the agency undertook, not by its results. *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). In other words, the agency must simply demonstrate that its search was "reasonably calculated to discover the requested documents." *Id*.; *see also N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014) ("The adequacy of a search is not measured by its results, but rather by its method."). The search "need not be perfect, but rather need only be reasonable," *Grand Cent. P'ship*, 166 F.3d at 489, because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (citation omitted).

Moreover, "[t]here is no requirement that an agency search every record system." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency is not expected to "take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents." *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002) (internal quotation marks omitted). An agency's search may be reasonable even if it does not return every responsive document. *See Adamowicz v. Internal Revenue Serv.*, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008) (an agency must make "a good faith effort to search for the requested documents," but "[t]his standard does not demand perfection, and thus failure to return all responsive documents is not necessarily inconsistent with reasonableness"); *Meeropol v. Meese*, 790 F.2d 942, 950-51 (D.C. Cir. 1986) ("the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.") (emphasis in original).

"If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue." *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d at 366. An agency may satisfy its burden

of demonstrating an adequate search through "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search." *Carney*, 19 F.3d at 812 (footnote omitted); *Gonzalez v. U.S. Citizenship & Immigr. Servs.*, 475 F. Supp. 3d 334, 347 (S.D.N.Y. 2020) ("The reasonableness of a search may be established solely on the basis of the Government's relatively detailed, non-conclusory affidavits that are submitted in good faith.). Where an agency's declaration demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Maynard v. Cent. Intel. Agency*, 986 F.2d 547, 560 (1st Cir. 1993); *see also Carney*, 19 F.3d at 812. "[P]urely speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption. *Carney*, 19 F.3d at 813. Thus, a court may award summary judgment if the affidavits provided by the agency are "adequate on their face." *Id.* at 812.

The Pineiro Declaration outlines the various steps that ICE took to search for records relating to INA § 274D and individuals taking sanctuary. (*See* Pineiro Decl. ¶¶ 27-46). In response to the Request, the ICE FOIA Office identified ERO, the ICE unit that oversees programs and conducts operations to identify and apprehend removable aliens, and ICE Policy, the unit of ICE that, among other things, identifies, develops and communicates agency policies to internal and external stakeholders as well as executes strategic policy initiates on behalf of ICE leadership, as likely to possess responsive records. (*Id*. at ¶¶ 27-32). The ICE FOIA Office tasked both of those ICE program offices with searching for responsive documents. (*See id*.). ERO searched for responsive documents in: (i) the ERO Policy Library; (ii) the ICE Policy Manual; (iii) the ERO Field Operations SharePoint; (iv) the ERO Field Operations hard drive; and (v) the computer and

email of the ERO Enforcement Program Manager.  (*Id*. at ¶¶ 29-31).  Similarly, ICE Policy, using relevant search terms, searched the ICE Policy Manual and ICE Policy Shared Drive.  (*Id*. at ¶ 32).

Then, following the filing of this action, ICE conducted additional searches for responsive records.  (*See id*. at ¶ 33).  ERO supplemented its original search by having the Executive Associate Director, the Deputy Executive Associate Director and its Chief of Staff conduct searches of their emails, using relevant search terms, for potentially responsive documents.[7]  (*Id*. at ¶¶ 34-37).  Further, the OPLA FOIA POC, based on their review of the substance of the FOIA request and based on their subject matter expertise and knowledge of OPLA's practices and activities, and communications with ICE's counsel, tasked seven OPLA employees with conducting searches of their emails.  (*Id*. at ¶ 38).  Those employees included the Executive Deputy Principal Legal Advisor, the Deputy Principal Legal Advisor for Enforcement and Litigation, the Deputy Principal Legal Advisor for General and Administrative Law, the Deputy Chief of the Revenue Recovery Unit within the Commercial and Administrative Law Division, and three associate legal advisors within the Commercial and Administrative Law Divisions.  (*Id*. at ¶¶ 38-44).

In sum, the Pineiro Declaration, which outlines the methods and terms used to search for documents responsive to the Request, demonstrates that ICE's search was reasonably calculated to discover the seven categories of records requested by Plaintiffs.  That is all that is required for ICE to be entitled to summary judgment on the adequacy of its search.  *See e.g., Amnesty Int'l USA v. Cent. Intel. Agency*, 728 F. Supp. 2d 479, 497 (S.D.N.Y. 2010) (finding declaration sufficient to warrant summary judgment on adequacy of CIA's search where declarant outlined efforts made by CIA and its personnel in detailed and nonconclusory fashion).  Accordingly, ICE is entitled to summary judgment on the issue of whether its search was adequate.

---

[7]     The Deputy Executive Associate Director and its Chief of Staff also searched their computers for potentially responsive records.  (Pineiro Decl. ¶¶ 36-37).

## C. ICE Has Properly Withheld Information Protected by the Attorney-Client, Attorney Work Product and Deliberative Process Privileges Pursuant to Exemption 5

Exemption 5 of FOIA protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5); *see Hopkins v. U.S. Dep't of Hous. and Urb. Dev.*, 929 F.2d 81, 84 (2d Cir. 1991) ("By this language, Congress intended to incorporate into the FOIA all the normal civil discovery privileges."). Stated simply, Exemption 5 serves to protect agency documents which would be subject to the attorney-client, work-product, and deliberative process privileges, if they were to be sought by a private litigant in an action against the agency. *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002).

As explicated by the Pineiro Declaration and *Vaughn* index, the largest category of withholdings subject to challenge are withholdings ICE made pursuant to Exemption 5. It is thus worth noting, at the outset, that the civil fines initiative stemmed from Executive Order 13768, which, by its terms, required the Secretary of Homeland Security to issue guidance and promulgate regulations regarding the imposition of civil fines on aliens unlawfully present in the United States. *See* Exec. Order No. 13768, 82 Fed. Reg. 8799 (Jan. 30, 2017). In order to properly implement the requirements of Executive Order 13768, ICE's program offices (including their attorneys) and other DHS personnel participated in many open and frank discussions regarding recommendations and analyses to determine, among other things, (1) how to begin assessing and collecting fines, (2) how to respond to legal challenges that would arise, and (3) the specific process and steps ICE ERO would need to take in order to determine who to fine, how they would be fined, and how the fines would be collected.[8] (*See* Pineiro Decl. ¶ 55). These discussions generated documents by

---

[8] Those final policies, which were ultimately promulgated through, *inter alia*, ICE Directive 100881.1: Fines and Penalties for Civil Violations of Immigration Law, which listed the procedures and requirements for the fine issuance process and ICE Delegation Order 01-2018 which granted field offices

ICE personnel that consist of deliberations, contemplated actions, and proposals with respect to the civil fines initiative, as well as draft documents. (*See id.* at ¶ 71). Further, given that the civil fines initiative was a new initiative based on existing authority from 1952, ICE personnel and attorneys engaged in extensive legal analyses, deliberations, and consideration before ICE finalized its policies and procedures with respect to assessing and collecting civil fines for violations of immigration law. (*See id.* at ¶¶ 60-61). Accordingly, and as explained in the Pineiro Declaration and the accompanying *Vaughn* index, ICE asserted Exemption 5 to withhold information that is protected by the attorney-client, attorney work product, and deliberative process privileges.

1.    **ICE Properly Withheld Records Pursuant to the Attorney-Client Privilege**

The attorney-client privilege, contained in Exemption 5, encompasses facts divulged by a client to his attorney, opinions given by an attorney to his client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect client-supplied information. *See Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 114 (D.D.C. 2005); *accord Brennan Ctr. for Just. at New York Univ. Sch. of L. v. U.S. Dep't of Just.,* 697 F.3d 184, 207 (2d Cir. 2012); *McKinley v. Bd. of Governors of Fed. Res. Sys.*, 849 F. Supp. 2d 47, 65 n. 15 (S.D.N.Y. 2012). The purpose of the attorney-client privilege "is to encourage attorneys and their clients to communicate fully and frankly and thereby to promote broader public interests in the observance of law and administration of justice." *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). For that reason, "the attorney-client privilege protects most confidential communications

_____

and local-level ICE officers authority to decide whom to fine under the guidance, were produced to Plaintiffs. (*See* Pineiro Decl. ¶ 56).

between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance." *Id.*

"In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997). Indeed, "the traditional rationale for the attorney-client privilege applies with special force in the government context. It is crucial that government officials, who are expected to uphold and execute the law . . . be encouraged to seek out and receive fully informed legal advice." *County of Erie*, 473 F.3d at 419 (internal quotation and citation omitted). To invoke the attorney-client privilege, a party must demonstrate that there was: "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Id.* Confidentiality between an attorney and client may be inferred when the communications suggest that "the government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

As set forth in detail in the Pineiro Declaration and the *Vaughn* index, ICE withheld records containing confidential communications between attorneys (within ICE OPLA and to DHS Office of the General Counsel) and their client (ICE Senior Leadership, and individuals within ICE ERO, ICE Policy, and ICE Office of Public Affairs ("OPA")) relating to multiple aspects of the implementation and continuation of the civil fines initiative. (*See* Pineiro Decl. ¶ 60). Such communications include emails containing legal advice and proposed legal strategy, as well as discussions between ICE attorneys and other personnel for the purpose of obtaining and rendering legal advice on the following topics: (i) how to assess fines on noncitizens who fail to depart the United States during the voluntary departure period; (ii) the process for identifying individuals

who are candidates for the imposition of a civil fine and the application of civil fines on particular groups of noncitizens, including those taking sanctuary; (iii) having ICE's Bond Management Unit assist with reviewing noncitizen cases for potential fines; (iv) ICE's statutory authority for the assessment and collection of civil fines; (v) the statute of limitations on ICE's imposition of civil fines; (vi) complying with the Paperwork Reduction Act; (vii) letters withdrawing the imposition of civil fines and the draft Civil Fines handbook; (viii) the draft Civil Fines handbook; (ix) the accounts to be used for depositing civil penalties; (x) the filing of documents and litigation strategy in particular noncitizens' Immigration Court proceedings; and (xi) discussions concerning the review policy to be implemented pertaining to Section 274D orders.  (*See id*.).

Pursuant to the attorney-client privilege, ICE also withheld legal memoranda and opinions (as well as communications concerning such documents), that were drafted by attorneys in order to evaluate the legal implications, hurdles, concerns, and recommendations that were involved assessing and collecting civil fines against certain individuals pursuant to the INA.  (*See id*. at ¶ 61).  To be precise, ICE withheld legal memoranda and opinions pertaining to: (i) ICE's process for collecting fines and penalties pursuant to statutory and regulatory authority; (ii) the process by which ERO would issue Notices of Intent to Fine under Sections 274D and 240B(d)(1) of the INA; (iii) actions for ICE to take following the imposition of a civil fine on an individual noncitizen; (iv) a potential pilot project pertaining to the collection of civil fines by ICE ERO Field Operations; (v) how ICE could use the funds collected from civil fines in accordance with its statutory authority; (vi) the Department of the Treasury's, Bureau of Fiscal Service's Treasury Offset Program, and the collection of delinquent fines; (vii) using case law to defend ICE's civil fines initiative; and (viii) the status of future cases that might be considered for fines and future collections.  (*See id*.).

These attorney-client communications and legal memoranda and opinions from agency counsel provide advice to ICE about recommended actions and legal decisions. (*See id*. at ¶¶ 60-61). Accordingly, ICE has properly withheld them pursuant to Exemption 5. *See e.g., Nat. Res. Def. Council v. U.S. Env't Prot. Agency,* No. 17 Civ. 5928 (JMF), 2019 WL 4142725, at *15 (S.D.N.Y. Aug. 30, 2019) (finding EPA properly withheld communications between EPA counsel and EPA employees relating to legal advice, legal review of draft documents, and draft agenda for meeting with EPA attorneys); *N.Y. Times Co. v. U.S. Dep't of State,* No. 19 Civ. 645 (JSR), 2019 WL 2994288, at *4 (S.D.N.Y. July 9, 2019) (finding withholdings justified where they "contain confidential communications from State employees to a State attorney for the purpose of obtaining legal advice, confidential communications from a State attorney to a State employee[ ] providing legal advice, and communications between State attorneys reflecting the development of that legal advice"); *Fox News Network, LLC v. U.S. Dep't of The Treasury,* 739 F. Supp. 2d 515, 560 (S.D.N.Y. 2010) ("[T]o the extent attorneys were advising Treasury about such topics as complying with [a new federal statute] or how the new statute interacted with existing law, their communications plainly were privileged."); *see also Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 65 (D.D.C. 2015) (finding no question that redaction was properly exempted under attorney-client privilege because "the particular portion [of an e-mail chain] redacted by the Government contains a communication between a DHS employee and a DHS attorney seeking legal review and advice").

### 2. ICE Properly Withheld Records Pursuant to the Attorney Work Product Privilege

Exemption 5 also encompasses the attorney work product privilege, which "prohibits one party in litigation from discovering from its adversary any 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative,'

absent a showing of substantial need." *N.Y. Times Co. v. U.S. Dep't of Justice*, 939 F.3d 479, 489 (2d Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(3)(A)).  The attorney work product privilege protects "the files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways prepared in anticipation of litigation." *A. Michael's Piano, Inc. v. Fed. Trade Comm'n*, 18 F.3d 138, 146 (2d Cir. 1994).  Courts have recognized that the work product doctrine "should be interpreted broadly and held largely inviolate." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)).  In assessing whether a record constitutes as attorney work product, the relevant question is whether the document can fairly be said to have been prepared or obtained because of the prospect of litigation; a specific claim or case need not have arisen.  *ACLU v. U.S. Dep't of Just.*, 210 F. Supp. 3d 467, 482 (S.D.N.Y. 2016) (citing *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015)).

As ICE developed the civil fines initiative, ICE and DHS attorneys were acutely aware of potential legal challenges to the imposition of the civil fines and its heightened potential for litigation.  (*See* Pineiro Decl. ¶ 63).  Accordingly, many of the records responsive to the Request consist of records prepared by ICE attorneys in anticipation of legal challenges to the civil fines initiative generally, as well as in anticipation of challenges that would arise in individual cases. (*See id*.).  Pursuant to the work product privilege, ICE withheld information in records that was prepared by agency attorneys — specifically, questions, thoughts, strategy, and legal analysis (as well as intra-agency communications discussing the information in these records) regarding ICE's authority to impose civil penalties pursuant to Section 274D of the INA, as well as

communications reflecting legal advice and litigation strategy with respect to specified immigration court proceedings. (*See id*. at ¶ 64).

Those records were prepared by ICE and DHS attorneys in contemplation of future litigation challenging the civil fines initiative, which litigation ultimately came to fruition, *see Austin Sanctuary Network et al. v. Gaynor et al.*, No. 21 Civ. 164 (ZMF) (D.D.C. Jan. 19, 2021), and in order to assist ICE with its legal filings and litigation strategy in ongoing immigration proceedings. (*See* Pineiro Decl. ¶ 65). Such types of attorney-prepared records and communications are properly withheld pursuant to the attorney-work product privilege. *See Sorin v. U.S. Dep't of Just.*, 758 F. App'x 23, 32 (2d Cir. 2018) (holding that "(1) emails sent between various federal law enforcement officials concerning the details of a then-ongoing criminal investigation and associated legal theories and litigation strategies; and (2) attorney-written notes, memoranda, and drafts regarding that investigation and the associated planned prosecutions" constituted attorney work product); *Assadi v. U.S. Citizenship & Immigr. Servs.*, No. 12 Civ. 1374 (RLE), 2015 WL 1500254, at *8-10 (S.D.N.Y. Mar. 31, 2015) (emails and notes regarding agency action that was likely to be (and was ultimately) subject to litigation properly withheld as attorney work product); *see also Delaney, Migdail & Young, Chartered v. I.R.S.*, 826 F.2d 124, 127 (D.C. Cir. 1987) ("IRS memos [that] advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome" constitute attorney work product).

### 3. ICE Properly Withheld Records Pursuant to the Deliberative Process Privilege

#### i. The Deliberative Process Privilege

The deliberative process privilege aims to "protect[] the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions."

*Hopkins*, 929 F.2d at 84; *accord Nat'l Labor Relations Bd. v. Sears, Roebuck & Co*., 421 U.S. 132, 150-51 (1975) ("those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decision making process" (quotation marks omitted)). As courts have repeatedly explained, the relevant harm is to the process of agency decision-making, not a harm to a particular decision, and the injury arises where officials' privileged discussions are subject to disclosure such that officials are "forced to operate in a fishbowl." *Wolfe v. U.S. Dep't of Health & Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988). Thus, even the status of an agency decision within an agency decision-making process may be protectible if the release of that information would have the effect of prematurely disclosing "the recommended outcome of the consultative process … as well as the source of any decision." *Id.* at 775.

An agency record must satisfy two criteria to qualify for the deliberative process privilege: it "must be both 'predecisional' and 'deliberative.'" *Grand Cent. P'ship*, 166 F.3d at 482 (citations omitted). A document is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). In determining whether a document is pre-decisional, an agency does not have to point specifically to an agency final decision, but merely establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States*, 617 F.2d at 868. The Supreme Court has made clear that:

> Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

*Sears*, 412 U.S. at 151 n.18.  Courts have emphasized the importance of identifying the larger process to which a document contributes.  *See, e.g., Access Reports v. U.S. Dep't of Just.*, 926 F.2d 1192, 1196 (D.C. Cir. 1991) ("The Department here met its burden of identifying the decisionmaking process to which Robinson's memorandum contributed—the Department's study of how to shepherd the FOIA bill through Congress.")

"A document is 'deliberative' when it is actually related to the process by which policies are formulated."  *Grand Cent. P'ship*, 166 F.3d at 482 (quotation marks and alteration omitted).  In determining whether a document is deliberative, courts inquire whether it "formed an important, if not essential, link in [the agency's] consultative process," whether it reflects the opinions of the author rather than the policy of the agency, and whether it might "reflect inaccurately upon or prematurely disclose the views of [the agency]."  *Id.* at 483; *accord Hopkins*, 929 F.2d at 84.  The privilege "focus[es] on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *Hopkins*, 929 F.2d at 84-85 (quoting *Sears*, 421 U.S. at 150).

"It is well-settled that draft documents, by their very nature, are typically predecisional and deliberative.  They reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation by their authors or by their superiors."  *Color of Change v. U.S. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 453 (S.D.N.Y. 2018) (internal quotation and citation omitted); *accord, e.g., Nat'l Council of La Raza v. U.S. Dep't of Justice*, 339 F. Supp. 2d 572, 583 (S.D.N.Y. 2004) ("Drafts and comments on documents are quintessentially predecisional and deliberative.").

### ii. ICE Properly Withheld Draft Documents Pursuant to the Deliberative Process Privilege

ICE withheld in full a number of draft documents, including: (1) draft legal memorandums and legal opinions; (2) draft responses to Questions for the Record following a Congressional hearing; (3) draft versions of the ICE ERO civil fines handbook and corresponding attachments and/or appendices that were never finalized; (4) draft guidance to the ERO Field Offices regarding next steps in order to implement the civil fines initiative in each field office's area of responsibility, (5) preliminary drafts of forms and letters to aid ICE in the execution of the civil fines initiative, (6) draft briefing materials prepared by ICE staff to assist in the preparation of ERO Leadership for a meeting with the ICE Acting Director which predate the meeting and reflect the drafter's opinions and analysis on various topics concerning the civil fines initiative; (7) a draft Executive Summary drafted by ICE attorneys pertaining to the civil fines that can be collected by ICE; (8) a draft Executive Summary concerning an individual's immigration history, encounter with ICE, and current location; (9) a draft PowerPoint presentation including an explanation of the statutory authority to impose penalties, considerations following immigration court proceedings, the commencement of the fines' proceedings, the decision process, and the actual collection of penalties; (10) draft news releases that were subject to further review and edits; and (11) a draft template for a legal pleading prepared by ICE OPLA attorneys to potentially be used in future immigration court proceedings by the Department of Justice's Executive Office of Immigration Review.[9]   (Pineiro Decl. ¶ 66).   ICE further withheld emails and other documents containing comments on such draft documents.  (*See id*. at ¶ 72).  Such drafts and comments contain advisory

---

[9]     Many of the draft documents withheld from the responsive document set contain significant edits, marginal suggestions and comments, and/or embedded questions regarding content.  (Pineiro Decl. ¶ 68).  These records were also either marked as a watermark or in the header/footer as "draft," "pre-decisional," "draft deliberative," or "pre-decisional draft," further emphasizing that these documents were not in their final form and remained subject to further discussion and revision.  (*Id*.).

opinions, recommendations, and deliberations in aid of formal agency policy, including policy with respect to ICE's implementation, review, and litigation of the civil fines initiative. (*See* id. at ¶ 66).

"Draft documents and comments on draft documents are quintessentially predecisional and deliberative." *See La Raza*, 339 F. Supp. 2d at 583; *see Lead Indus. Ass'n v. OSHA,* 610 F.2d 70, 85-86 (2d Cir. 1979) (protecting draft documents containing factual material as compilation in draft document reflected deliberative process); *Tigue,* 312 F.3d at 79 (protecting documents discussing which parts of draft to include in final, public version because "editorial decisions such as determining which parts, if any, of a confidential document to include in a public record are precisely the type of internal agency decisions that Exemption 5 was designed to protect"); *Nat'l Sec. Archive v. Cent. Intel. Agency,* 752 F.3d 460, 465 (D.C. Cir. 2014) (finding draft exempt under Exemption 5 because in creating draft, selection of facts thought to be relevant was part of deliberative process); *Wadhwa v. U.S. Dep't of Veterans Affs.*, 707 F. App'x 61, 63 (3d Cir. 2017) (holding that draft reports and internal communications generated as part of agency decision-making may be properly withheld pursuant to Exemption 5). Draft documents, like those at issue here, and comments on such draft documents, are routinely afforded the deliberative process privilege. *See, e.g., Nat. Res. Def. Council*, 2019 WL 4142725, at *7 (holding that draft rules and guidance documents, the inter- and intra-agency comments and responses to such drafts, and the other documents created to assist EPA staff in developing formal agency policy were central to the development of those formal rules and guidance documents — that is, paradigmatically part of the "deliberative process"); *Color of Change*, 325 F. Supp. 3d at 453 (holding that draft documents and comments on draft documents are predecisional, in that they reflect initial discussions

preceding a final paper, and deliberative, in that they reflect the process through which policy papers are created).

### iii. ICE Properly Withheld in Part Predecisional, Deliberative Internal Discussions, Deliberations, and Recommendations

As described in the *Vaughn* index, ICE also asserted the deliberative process privilege to withhold predecisional and deliberative internal communications, discussions, and recommendations shared between and amongst ICE Senior Leadership, ERO, OPLA, and OPA pertaining to the assessment, collection, and invocation of civil fines and penalties against individuals pursuant to the INA, as a result of Executive Order 13768. (Pineiro Decl. ¶ 72). In addition to those records for which ICE has asserted the attorney-client and attorney work product privileges, those records include emails, meeting minutes, and presentations pertaining to (1) discussions regarding comments and edits made to draft documents; (2) deliberations and recommendations pertaining to potential candidates for the imposition of a civil penalty; (3) discussions concerning which divisions of ICE would review potential candidates for fines and the factors ICE would consider in assessing whether an individual is a proper candidate for a civil penalty; (4) discussions concerning the status and timing of ICE's implementation of the civil fines initiative; (5) discussions about expanding the civil fines initiative; (6) discussions about how to respond to potential publicity that could stem from the issuance of the Notices of Intention to Fine letters; (7) discussions concerning the proposed messaging and focus of an upcoming interview with the Washington Times; (8) discussions about the potential use of a particular account for the collection and depositing of civil fines; (9) discussions and proposals about the steps that ICE should take in order to issue Notices of Intention to Fine to applicable individuals; (10) recommendations about whether to proceed with issuing notices to certain individuals; (11) recommendations concerning the use of certain forms during the civil fines process; and (12)

discussions regarding the establishment of the ICE Victims of Immigration Crime Engagement Office ("VOICE"). (*Id*.).

These records are predecisional in nature because they were prepared for purposes of assisting ICE officials in making final determinations regarding, among other things, when, how, and upon whom ICE should impose civil penalties. (*See id*. at ¶ 73). They are deliberative because they reflect ongoing recommendations, analyses, and discussions as to how ICE and its various program offices should implement the mandate contained in the Executive Order and assess whether the policies and procedures that ICE formulated in response to such Executive Order were working. (*See id*. at ¶ 74). ICE properly withheld these communications and documents subject to the deliberative process privilege because they would reveal the "give-and-take through which" ICE ultimately reached its final policy with respect to the issuance of civil fines. *See Sears*, 421 U.S. at 150 (Exemption 5 protects "all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be."); *accord Taxation With Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981) (noting that "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated" are routinely protected by deliberative process privilege).

Courts routinely uphold agencies' withholdings pursuant to the deliberative process privilege where the relevant records consist of comments on draft documents, *see N.Y. Times Co. v. U.S. Dep't of Defense*, 499 F.Supp.2d 501, 515 (S.D.N.Y. 2007) (email was predecisional and deliberative as it "comment[ed] on a draft . . . paper and raise[d] a possible issue to be considered") (citation and marks omitted); reports, recommendations, and advice to agency decision-makers, *see Am. Fed'n of Gov't Emp., AFL-CIO v. Dep't of Army*, 441 F. Supp. 1308, 1311 (D.D.C. 1977) (report prepared for the review of commander who was final decision-making authority rendered

the report entirely predecisional in nature); *Elec. Frontier Found. v. U.S. Dep't of Just.*, 892 F. Supp. 2d 95, 102 (D.D.C. 2012) (protecting material that "constitutes advice used by decision-makers at the FBI . . . in the context of their efforts to ensure that any [FBI] information-gathering procedures fully comply with the law") (internal quotations omitted), *aff'd*, 739 F.3d 1 (D.C. Cir. 2014); and the proposed messaging of agency policy, *see ACLU v. U.S. Dep't of Just.*, 844 F.3d 126, 133 (2d Cir. 2016) (proposed op-ed article that suggested ways of explaining government's legal reasoning to the press was predecisional); *Fox News*, 739 F. Supp. 2d at 545 (draft press release about a non-final policy decision, along with emails about the press release, were privileged because they revealed alternatives that were ultimately not adopted and discussed rationales that may not accurately reflect the ultimate rationale for the policy decision); *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 617 (S.D.N.Y. 2018) ("the State Department here may withhold documents that reflect agency deliberations regarding the manner in which its policies are explained to the public"); *ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F.Supp.2d 130, 136 (D.D.C. 2008) (emails containing agency employees' opinions on public relations were subject to the deliberative process privilege).

### iv. Release of the Documents Withheld Pursuant to Exemption 5 Would Result in Reasonably Foreseeable Harm

Under the 2016 FOIA Amendments, "[a]n agency shall withhold information [pursuant to the deliberative process privilege] only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)." 5 U.S.C. § 552(a)(8)(A)(i). "To satisfy the 'foreseeable harm' standard, an agency "must explain how a particular Exemption 5 withholding would harm the agency's deliberative process." *Nat. Res. Def. Council*, 2019 WL 3338266, at *1 (quoting *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 72, 78 (D.D.C. 2018)).

Here, ICE determined that release of the documents reflecting ICE's predecisional deliberations concerning the civil fines initiative would discourage the expression of candid opinions, and inhibit the free and frank exchange of information among agency personnel. (*See* Pineiro Decl. ¶¶ 70, 74). This harm would result in a chilling effect on intra- and inter-agency communications and impede ICE employees' ability to discuss proposed agency action freely. (*See id.* at ¶ 70). Agencies routinely withhold records pursuant to the deliberative process privilege on the grounds that such withholdings permit agency officials to have candid policy discussions, thus enhancing governmental decision-making, about important public issues without fearing that these candid discussions will later be made available to the public. *See Cause of Action Institute v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 355 (D.D.C. 2018) (agency's declaration "explained the manner in which disclosure would stifle 'full and frank' communication," and "[n]o more is required on this front"); *Reporters Comm. For Freedom of the Press v. Fed. Bureau of Investigation*, No. 15 Civ. 1392 (RJL), 2020 WL 1324397, at *8 (D.D.C. Mar. 20, 2020) (upholding agency's withholding of draft documents where "the agency reasonably foresees harm, as disclosure would reveal the thought and decision-making processes of the OIG and may not reflect the agency's final decisions" and revealing internal advice and recommendations would "degrade[e] the quality of agency decisions by depriving decision-makers of fully-explored options developed from robust debate.") (internal quotation and citation omitted); *N.Y. Times Co. v. U.S. Dep't of State*, No. 19 Civ. 645 (JSR), 2019 WL 2994288, at *3 (S.D.N.Y. July 9, 2019) (finding reasonably foreseeable harm in relation to deliberative materials that discussed, *inter alia*, a "road map of [the agency's] thinking on policy matters").

ICE also applied the deliberative process privilege to prevent the disclosure of proposed policies in order to avoid public confusion generated by rationales or decisions that ICE did not

ultimately adopted. Specifically ICE sought to avoid public confusion on (i) how ICE assessed, analyzed, and proposed to collect civil fines against individuals with a final order of removal, and (ii) whether reviews, analyses, and recommendations pertaining to ICE's procedures to implement the civil fines initiative were ultimately adopted by ICE. (*See* Pineiro Decl. ¶ 69). Agencies routinely withhold records pursuant to the deliberative process privilege on the grounds that such documents might mislead the public. *See, e.g., Color of Change,* 325 F. Supp. 3d at 454 (release "might mislead the public as to [the agency's] reasoning, which it is entitled to keep private in the spirit of free discussion in the policy-making process"); *see also Coastal States*, 617 F.2d at 866 (one of the purposes of the deliberative process privilege is "to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action").

## D. ICE Properly Withheld Law Enforcement Records Pursuant to Exemption 7(E)

ICE properly withheld additional law enforcement records pursuant to FOIA Exemption 7(E). Exemption 7(E) exempts from disclosure records that: (1) "would disclose techniques and procedures for law enforcement investigations or prosecutions"; *or* (2) "would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Allard K. Lowenstein Int'l Project v. U.S. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010). Notably, records compiled for law enforcement purposes may relate to either criminal or civil matters. *See Shapiro v. U.S. Dep't of Justice*, 37 F. Supp. 3d 7, 29 (D.D.C. 2014) (records gathered or assembled "in connection with investigations that focus directly on specific alleged illegal acts which could result in civil or criminal sanctions" plainly qualify as law enforcement records).[10] Accordingly,

---

[10] "As the D.C. Circuit has explained, '[l]aw enforcement entails more than just investigating and prosecuting individuals after a violation of the law.' The 'ordinary understanding' of the term 'includes .

Exemption 7(E) encompasses the withholding of a wide range of techniques and procedures, including immigration enforcement techniques. *See Lowenstein*, 626 F.3d at 680-82 (finding that criteria used to rank priority of immigration enforcement cases constitutes techniques and procedures); *Tran v. U.S. Dep't of Just.*, No. 01-0238, 2001 WL 1692570, at *3 (D.D.C. Nov. 20, 2001) (concluding that agency form—used when agencies share information from immigration records—was properly withheld because it would reveal law enforcement techniques).

ICE is the largest investigative arm of DHS and the second largest investigative agency in the federal government. (Pineiro Decl. ¶ 77). The records and information at issue in this matter pertain to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be present in the United States illegally, including a potential application of a civil penalty for those individuals who have a final order of removal from an Immigration Judge. (*See id*. at ¶ 78). Accordingly, various documents responsive to the Request contain information on the law enforcement techniques and procedures ICE established in response to Executive Order 13768. Because of the novelty of the civil fines initiative, the procedures and techniques that ICE developed in order to implement the initiative are not well known to the public. (*See id*. at ¶ 79).

Pursuant to Exemption 7(E), ICE applied a limited number of redactions to law enforcement sensitive system URLs, internal shared drive names, an internal law enforcement system name, and internal case tracking numbers. (Pineiro Decl. ¶ 92). This information, used for the purpose of retrieving sensitive law enforcement information, is not commonly known, and

. . proactive steps designed to prevent criminal activity and maintain security.'" *Human Rights Watch v. U.S. Dep't of Justice Fed. Bureau of Prisons*, No. 13 Civ. 7360, 2015 WL 5459713, at *5 (S.D.N.Y. Sept. 16, 2015) (citation omitted) (quoting *Public Emps. for Env't. Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 203 (D.C. Cir. 2014)).

could be used to breach sensitive law enforcement systems, navigate within those systems and compromise the integrity of the data contained therein, which could put law enforcement officers and the public at risk. (*Id*.); *see e.g., Brown v. Fed. Bureau of Investigation*, 873 F. Supp. 2d 388, 407-08 (D.D.C. 2012) (withholding Vehicle Identification Numbers of vehicles used in undercover operations because criminals could determine which vehicles were being used by law enforcement agents); *Asian Law Caucus v. U.S. Dep't of Homeland Sec.*, No. 08-00842, 2008 WL 5047839, at *4 (N.D. Cal. Nov. 24, 2008) (approving protection of database names that relate to watch lists, noting that watch lists may be common knowledge but disclosure of related database names "could . . . facilitate improper access to the database"); *Miller v. U.S. Dep't of Just.*, 872 F. Supp. 2d 12, 28-29 (D.D.C. 2012) (protecting law enforcement database numbers maintained by DEA because release could reveal law enforcement techniques or otherwise lead to legal circumvention).

Pursuant to Exemption 7(E), ICE also withheld in part a document compiled for law enforcement reflecting an overview of the process of issuing civil fines against a noncitizen, including the initial review of potential cases, steps prior to issuing a Notice of Intention to Fine letter, steps following the issuance of a Notice of Intention to Fine letter, the various stages of review that must occur, and steps to collect a fine. (*See* Pineiro Decl. ¶ 93). Release of the withheld law enforcement records would reveal the techniques, procedures, and guidelines that ICE instituted to impose civil fines on noncitizens and would allow those seeking to violate the law to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. (Pineiro Decl. ¶¶ 92-93). These types of law enforcement records are routinely withheld pursuant to Exemption 7(E). *See, e.g., Lowenstein*, 626 F.3d at 680-82 (finding that criteria used to rank priority of immigration enforcement cases constitutes techniques and procedures); *Ibrahim v. U.S. Dep't of State*, 311 F. Supp. 3d 134, 143 (D.D.C. 2018) (finding that

Exemption 7(E) applies to lines of questioning in Refugee Application Assessment because disclosure could enable applicants to strategically plan inaccurate responses); *Ahmed v. U.S. Citizenship & Immigration Serv.*, No. 11-6230, 2013 WL 27697, at *4-5 (E.D.N.Y. Jan. 2, 2013) (protecting techniques for vetting of naturalization applicants who might pose national security concerns).

Further, the disclosure of such information serves no public benefit and would not assist the public in understanding how the agency is executing its statutory responsibilities beyond what is already publicly known.  (Pineiro Decl. ¶ 94).  Accordingly, ICE is entitled to summary judgment on its withholdings pursuant to Exemption 7(E).

## E.  ICE Properly Withheld Personal Information Pursuant to Exemptions 6 and 7(C)

ICE also withheld documents pursuant to Exemptions 6 and 7(C), which both protect from disclosure material whose release would constitute an invasion of personal privacy.  Exemption 6 exempts from disclosure information from personnel, medical, or other similar files where disclosure "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982).  The statutory language concerning files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any "information which applies to a particular individual . . . sought from government records."  *Id.* at 602; *see also Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 174 (2d Cir. 2014).

To be protected, the individual's privacy interest in the information's nondisclosure need only be more than *de minimis*.  *See Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008).  Substantial privacy interests cognizable under the FOIA are generally

found to exist in such personally identifying information as a person's name, physical address, email address, image, computer user ID, phone number, date of birth, criminal history, medical history, and social security number. *See Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982) (finding that "[i]nformation such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet . . . such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy"). If a protected privacy interest is found, the court must then consider whether the "public interest in disclosure outweighs the individual privacy concerns." *Multi Ag Media*, 515 F.3d at 1230 (internal quotation marks omitted). But the "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] *significantly* to public understanding *of the operations or activities of the government*." *U.S. Dep't of Def. v. Fed. Lab. Rel. Auth.*, 510 U.S. 487, 495 (1994) (first emphasis added).

FOIA's Exemption 7(C) is more specific than Exemption 6: it excepts from disclosure records or information compiled for law enforcement purposes where its production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) "is more protective of privacy" than Exemption 6. *Associated Press v. U.S. Dep't of Justice*, No. 06 Civ. 1758 (LAP), 2007 WL 737476 at *4 (S.D.N.Y. Mar. 7, 2007).[11] In determining whether personal information is exempt from disclosure under Exemption

---

[11] Because of textual differences between Exemptions 6 and 7(C), the standard the government must show to meet exemption 7(C) is lower than for Exemption 6. *See, e.g., Am. C.L. Union v. U.S. Dep't of Def.*, 389 F. Supp. 2d 547, 569 (S.D.N.Y. 2005). First, under Exemption 7(C), the information's release need only be "reasonably [] expected to constitute" an unwarranted invasion of privacy, rather than the more definite "would constitute" such an invasion in Exemption 6. *Compare* 5 U.S.C. §§ 552(b)(7)(C) *with* (b)(6). Second, the invasion need only be "unwarranted" to meet Exemption 7(C), whereas to meet Exemption 6, the invasion must be "clearly unwarranted." *See id*.

7(C), the Court must balance the public's need for this information against the individual's privacy interest. *See Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 284 (2d Cir. 2009). Moreover, when the information at issue is the names of third parties who are merely mentioned in law enforcement files, the balance weighs heavily toward nondisclosure because the individuals' privacy interests are acute, *see Fitzgibbon v. Cent. Intel. Agency*, 911 F.2d 755, 767 (D.C. Cir. 1990) ("the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation"), and there is no cognizable public interest in the personal information—including the specific identities—of witnesses or other third parties whose names happen to appear in law enforcement files, *see Peletier v. Fed. Bureau of Investigation*, 219 Fed. App'x 30, 31 (2d Cir. 2007) ("We also note that disclosure of personal information about cooperating witnesses and other third parties advances no cognizable public interest under FOIA."); *SafeCard Servs., Inc. v. Sec. and Exch. Comm'n*, 926 F.2d 1197, 1205-06 (D.C. Cir. 1991) ("Indeed, unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant.").

Accordingly, and as explained in the Pineiro Declaration, ICE withheld certain records from disclosure pursuant to Exemptions 6 and 7(C) to protect both federal employees and third-parties privacy interests. (*See* Pineiro Decl. ¶¶ 82, 86). Specifically, ICE applied Exemptions 6 and 7(C) to protect the names, Alien numbers ("A-numbers"), health status, dates of birth, immigration case status, and other personally identifiable information of third parties contained in records discussing which individuals would be considered for a civil fine. (*See id*. at ¶ 82). Such

documents were compiled for law enforcement purposes as they contain information on individuals that ICE was investigating and indeed prosecuting through the issuance of civil fines. (*See id*. at ¶¶ 78, 87). In withholding such information relating to third parties who were the subject or potential subject of law enforcement activity, ICE considered such third parties' privacy interest in: (i) not being publicly associated with law enforcement investigations given the stigmatizing connotation carried by the mere mention of individuals in law enforcement files; and (ii) remaining free from embarrassment, humiliation, annoyance, harassment, intimidation, unofficial questioning, retaliation, and physical harm for having been identified in these law enforcement records. (*See id*. at ¶ 83).

ICE also applied Exemptions 6 and 7(C) to protect the names, email addresses, signatures, initials, and phone numbers of federal law enforcement officers and the names, addresses and phone numbers of other federal agency personnel. (*See id*. at ¶ 86). Those redactions were made in documents relating to ICE's mission of imposing civil fines on noncitizen individuals including ICE's delegation orders and directives which authorized and directed divisions of ICE to undertake to assess civil fines on individuals, as well as documents pertaining to individual civil fine cases. In withholding such information, ICE recognized that federal law enforcement officers face an increased risk of harassment and attack due to the nature of their work, especially with respect to the civil fines initiative, which was itself controversial. (*See id*. at ¶ 88). Accordingly, ICE considered the privacy interests of these federal law enforcement officers in: (i) not becoming targets of harassment related to the civil fines at issue; (ii) remaining free of interference in the performance of their duties by persons who are currently of interest to law enforcement or oppose the ICE mission; (iii) remaining free from harassment and annoyance in conducting their official duties in the future; (iv) remaining free from harassment and annoyance in their private lives; and

(v) not being targeted by individuals in the future who may begrudge them. (*See id*. at ¶ 87). Such information is routinely withheld pursuant to Exemptions 6 and 7(C). *See, e.g., Bernegger v. EOUSA*, 334 F. Supp. 3d 74, 89 (D.D.C. 2018) (finding names, addresses, and telephone numbers of AUSAs, legal assistants, law enforcement officers, and other personally identifiable information related to witness or nonparty individuals properly withholdable); *Shurtleff v. U.S. Env. Prot. Agency*, 991 F. Supp. 2d 1, 18-19 (D.D.C. 2013) (protecting work email addresses of EPA Administrator and Executive Office of the President personnel due to significant privacy interest of such individuals in avoiding harassment and unsolicited email).

Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in obtaining information that would shed light on the operations and activities of ICE in the performance of its statutory duties. (*See* Pineiro Decl. ¶ 90). Plaintiffs have failed to articulate any public interest that could be advanced by releasing this information and in each instance where Exemptions 6 and 7(C) were applied. Nor could they, as the redacted information was limited to the name of the individual or other personally identifiable information, which if released, would not shed any further light as to the operations or activities of ICE. (*See id*.). All of the information surrounding the redactions was released and the limited extent of the redaction is readily apparent from the context of the records. (*See id*.). Accordingly, ICE is entitled to summary judgment on its withholdings pursuant to Exemptions 6 and 7(C).

## F. ICE Properly Withheld Records Subject to Exemption 3

Under Exemption 3, matters "specifically exempted from disclosure by [a] statute" that "leave[s] no discretion on the issue" or "refers to particular types of matters to be withheld" need not be disclosed. 5 U.S.C. § 552(b)(3). When assessing whether Exemption 3 applies, a court

must determine (1) whether there is an applicable withholding statute, and (2) if so, whether the material withheld is within the statute's coverage. *Sims*, 471 U.S. at 167. Exemption 3 "differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Wilner*, 592 F.3d at 72.

ICE has withheld portions of two pages of records pursuant to 8 U.S.C. § 1367. (Pineiro Decl. ¶ 50). That statute prohibits the "use by or disclosure to anyone (other than a sworn officer or employee of the Department, or bureau or agency thereof, for legitimate Department, bureau, or agency purposes) of any information which relates to an alien who is the beneficiary of an application for relief" through a T visa for trafficking victims, a U visa for cooperating victims of certain other crimes, or special-rule cancellation for battered spouses or children. *See* 8 U.S.C. § 1367. ICE withheld portions of records containing personally identifiable information ("PII") (including the name, the A-number and other identifying information) of third-party noncitizens records to comply with the confidentiality provisions of § 1367. (Pineiro Decl. ¶ 50; *see Vaughn* at 178-79, 253-54).

## G. Defendant Has Properly Segregated Releasable Portions of the Redacted Records

FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). "[T]he law is clear that the reasonable segregation requirement of FOIA does not require [an agency] to commit significant time and resources to a task that would yield a product with little, if any, informational value." *Amnesty Int'l*, 728 F. Supp. 2d at 529 (quotation marks omitted). If "factual materials are 'inextricably intertwined' with policy making

recommendations so that their disclosure would compromise the confidentiality of deliberative information that is entitled to protection under Exemption 5, the factual materials themselves fall within the exemption." *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Adm.*, 610 F.2d 70, 85 (2d Cir. 1979) (internal quotation and citation omitted).

ICE reasonably segregated its release here by conducting a line-by-line review of these records, segregating factual information when it was not inextricably intertwined with deliberative content, and applying discretionary waivers of exemptions where appropriate. (*See* Pineiro Decl. ¶¶ 96-97); *see also The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 371 (E.D.N.Y. 2009) ("[W]hen the facts are so intertwined with a policy recommendation and thereby embody the judgment of its author, revealing those facts is akin to revealing the opinions of the author and the give-and-take of the deliberative process."). ICE did not withhold any non-exempt information on the grounds that it was non-segregable. (Pineiro Decl. ¶¶ 96-97).

Plaintiffs offer no basis to rebut the presumption to which ICE is entitled, especially in light of ICE's explanation articulated above. This is especially true in light of the fact that ICE did indeed release many records in full or in part. The fact that ICE released 2,183 pages of records that were only partially redacted, rather than withholding them in full only further reinforces that it engaged in a careful analysis in order to determine whether there were any segregable portions of the records that were withheld in full. Accordingly, the Court should find that all "reasonably segregable portion[s]" of the responsive records have been provided to Plaintiffs. *See* 5 U.S.C. § 552(b).

## CONCLUSION

For the reasons stated herein, ICE's motion for summary judgment should be granted.

Dated: October 29, 2021
       New York, New York

<div style="margin-left:40%">

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

</div>

By:     */s/ Tara Schwartz*
          TARA SCHWARTZ
          Assistant United States Attorney
          86 Chambers Street, Third Floor
          New York, New York 10007
          Telephone: (212) 637-2633
          E-mail: tara.schwartz@usdoj.gov