# EXHIBIT F:

**Additional Attachments (Not Challenged)**

# EXHIBIT F.1.

| Department of Homeland Security<br>U.S. Immigration and Customs Enforcement | ICE Delegation Order |
|---|---|

| ORDER NUMBER:<br>DO-01-2018 | FEA NUMBER:<br>306-112-002a | ISSUE DATE:<br>June 19, 2018 | EFFECTIVE DATE:<br>June 19, 2018 |
|---|---|---|---|

**SUBJECT:**
Delegation of authority to administer and enforce provisions relating to civil penalties for failure to depart.

| DELEGATED BY:<br>Director<br>U.S. Immigration and Customs Enforcement | DELEGATED TO:<br>Executive Associate Director (EAD)<br>Deputy EAD<br>Field Office Directors<br>Enforcement and Removal Operations |
|---|---|
| **SOURCE OF AUTHORITY BEING DELEGATED:**<br><br>DHS Delegation Number: 7030.2, "Delegation of Authority to the Assistant Secretary for the Bureau of Immigration and Customs Enforcement," dated November 13, 2004;<br>Immigration and Nationality Act (INA) §§ 240B and 274D; 8 U.S.C. §§ 1229c and 1324d; and 8 C.F.R. Part 280. | **SUPERSEDED ORDER(S):**<br><br>None. |

**DELEGATION:**
By virtue of the authority granted to the Director of U.S. Immigration and Customs Enforcement (ICE) in Department of Homeland Security (DHS) Delegation Number 7030.2, I hereby delegate to the Executive Associate Director (EAD), Deputy EAD, and the Field Office Directors of Enforcement and Removal Operations (ERO) the authority to administer and enforce provisions relating to civil penalties for failure to depart under INA §§ 240B and 274D, 8 U.S.C. §§ 1229c and 1324d, and 8 C.F.R. Part 280. This Delegation Order does not supersede authority granted to Homeland Security Investigations (HSI) officials to enforce 240B provisions in ICE Delegation Order 0001, which HSI will retain.

This authority may be redelegated, in writing, to the level of the Assistant Field Office Director, but no further.

(b)(6); (b)(7)(C)

Thomas D. Homan
Acting Director
U.S. Immigration and Customs Enforcement

# EXHIBIT F.2.

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**ICE Directive 10088.1: Fines and Penalties for Civil Violations of Immigration Law**

> **Issue Date:** June 19, 2018
> **Effective Date:** June 19, 2018
> **Superseded:** None.
> **Federal Enterprise Architecture Number: DO-01-2018**

1. **Purpose/Background.** This Directive sets forth U.S. Immigration and Customs Enforcement (ICE) policy regarding the assessment and collection of fines and penalties for civil violations of immigration law. This Directive is intended to implement sections 240B(d)(1), 274C(d)(3), and 274D(a) of the Immigration and Nationality Act (INA) and applicable regulations.[1] These provisions provide ICE with discretion to assess civil fines for failure to voluntarily depart the United States within the specified voluntary departure period,[2] prohibited activities involving document fraud,[3] and willful failure to depart pursuant to a final order of removal.[4]

2. **Policy.** ICE will exercise discretion in enforcing applicable laws and regulations governing the assessment and collection of fines and penalties against aliens, who have unlawfully remained in the United States beyond an authorized period of voluntary departure or in violation of a removal order, or individuals or business entities who have engaged in prohibited activities involving document fraud.

   When assessing civil fines and penalties, ICE will notify individuals and business entities of its intention to impose a fine and the right to request administrative review of the assessed fine. When assessing fines for document fraud, ICE will notify aliens that the civil fine process is separate from removal proceedings.

3. **Definitions.** The following definitions apply for purposes of this Directive only:

3.1. **Civil Fine.** A financial penalty for certain statutory civil immigration violations.

3.2. **Notice of Intent to Fine** or **Notice of Intention to Fine (NIF).** A standardized form that provides written notice to the respondent (a person or an entity) setting forth the alleged violation(s) of the INA, the imposition of a civil fine, and a description of the appeals process.

---

[1] *See* 8 C.F.R. pts. 270 (procedures for assessing fines for prohibited activities involving document fraud) and 280 (procedures for assessing fines for failing to voluntarily depart and failing to comply with a final order of removal).
[2] INA § 240B(d)(1).
[3] INA § 274C(d)(3).
[4] INA § 274D(a).

violation(s) of the INA, the imposition of a civil fine, and a description of the appeals process.

**3.3.** **Personal Service.** Consistent with 8 C.F.R. § 103.8(a)(2), delivery of a copy to the respondent or his or her attorney of record personally, delivery of a copy to the respondent's dwelling house or usual place of abode by leaving it with a person of suitable age and discretion, or delivery of a copy to the respondent's attorney of record or to the respondent by mailing a copy by certified or registered mail, return receipt requested, addressed to the respondent at his or her last known address.

**3.4.** **Final Decision.** The agency's decision to collect a fine after all administrative appeals have been exhausted or after the respondent fails to contest the fine within the timeframe permissible.

**4.** **Responsibilities.**

**4.1.** **The Executive Associate Directors for Enforcement and Removal Operations (ERO) and Homeland Security Investigation (HSI) and the Principal Legal Advisor** are responsible for ensuring compliance with the provisions of this Directive and issuing guidance within his or her Directorate or Program Office for implementation, as appropriate.

**4.2.** **ICE Law Enforcement Officers (LEOs)** are responsible for complying with the provisions of this Directive, as applicable, and other relevant agency, Directorate, or Program Office guidance on the process and procedures for assessing and collecting civil fines and penalties, including recordkeeping requirements.

**4.3.** **OPLA** is responsible for providing appropriate legal guidance and representing the Department of Homeland Security in any administrative appeal before the Board of Immigration Appeals.

**4.4.** **Office of the Chief Financial Officer (OCFO)** is responsible for the collection of civil fines and penalties, including creating accounts receivable for valid fines, issuing invoices, tracking the fines in ICE's financial system, and referring delinquent debts to the Department of the Treasury, as required by law.

**5.** **Procedures/Requirements.**

**5.1.** **Initiation of Fine Assessment.** ICE has discretion to determine when to impose a civil fine. ICE LEOs must ensure that sufficient evidence is gathered and properly documented prior to the assessment of a fine. A properly issued NIF will be issued on an approved, standardized form appropriate for the specific type of civil fine.

**5.2.** **Personal Service.** ICE will comply with service requirements in applicable regulations governing the civil fines process. LEOs will ensure that the NIF and/or Final Decision are served by personal service.

**5.3.** **Assessment of Fines**. ICE LEOs will calculate fine amounts, as defined in statute, and consider mitigating and aggravating factors, when applicable.

**5.4.** **Administrative Review of Fine.** Respondents may contest a fine prior to collection. ICE will notify respondents of the right to be represented by counsel at no cost to the government, and the right to request administrative review.

**5.5.** **Final Decision.** A final decision by ICE will be entered and served via personal service after the applicable regulatory process for assessing a fine has been completed and all available appeals are adjudicated or the period for filing an appeal has expired. Final Decisions may not be appealed.

**5.6.** **Collection of Fines.** ICE LEOs will submit a completed NIF and supporting materials to OCFO for the collection of civil fines after a final decision is served on the respondent. OCFO shall review the NIF and supporting materials and create an accounts receivable for valid fines and follow established regulatory procedures for collecting debts owed to the government. ICE LEOs may not accept payment for any civil fines.

**6.** **Recordkeeping.** ICE LEOs will create and maintain a Record of Proceeding which will be included as part of the Alien Registration File (A-File) or Case File for qualifying U.S. citizens, as applicable.

**7.** **Authorities/References.**

**7.1.** INA §§ 240B(d); 274C; 274D.

**7.2.** 8 C.F.R. pts. 270; 280.

**7.3.** Civil Monetary Penalty Adjustments for Inflation, 83 Fed. Reg. 13826 (Apr. 2, 2018) (updated annually).

**7.4.** DHS Delegation No. 7030.2, *Delegation of Authority to the Assistant Secretary for U.S. Immigration and Customs Enforcement* (Nov. 13, 2004).

**7.5.** ICE Delegation No. 0001, *Delegation of Authority to the Directors, Detention and Removal and Investigations, and to Field Office Directors, Special Agents in Charge and Certain Other Officers of the Bureau of Immigration and Customs Enforcement* (June 6, 2003).

**7.6.** ICE Delegation No. [INSERT], *Delegation of Authority to Administer and Enforce Provisions Relating to Civil Penalties for Failure to Depart* (INSERT DATE).

**8.** **Attachments.** None.

**9.** **No Private Right.** This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended

to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

(b)(6); (b)(7)(C)

**Thomas D. Homan**
**Acting Director**

# EXHIBIT F.3.

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## NOTICE OF INTENTION TO FINE UNDER SECTION 274D
## OF THE IMMIGRATION AND NATIONALITY ACT

**United States of America**

Office Address: ███████████████████████████

File Number: ███████████████████████████

Penalty Tracking Number: ███████████████████

In the matter of (Respondent): ████████████████

Address (Street Number and Name, City, State, and Zip Code):

████████████████████████████████████████████

Upon inquiry conducted by U.S. Immigration and Customs Enforcement (ICE), it is alleged that:

☒ On ___04/30/2015___ , an authorized Department of Homeland Security Immigration Officer, an Immigration Judge or the Board of Immigration Appeals issued you a Final Administrative Removal Order.

☒ On ___05/11/2015___ , you

████████████████████████████████████ with information necessary to obtain a travel document which could be used to effect your removal from the United States.

☒ On ___02/09/2018___ , you

took up residence at ███████████████████ Church in Austin for the purpose of evading arrest and removal by ICE.

☒ On ___02/13/2019___ , you

were advised through counsel to report to ICE in person on 03/19/2019. However, you failed to appear on that date violating the terms of your release under an Order of Supervision issued to you on 10/19/2018.

☒ At the time of the alleged violation(s) you remained subject to the final order of removal.

☒ You ☒ willfully failed or refused to depart the United States within the time period specified;

    ☒ willfully failed or refused to make timely application in good faith for travel or other documents;

    ☒ willfully failed or refused to present yourself for removal at time and place required by the Secretary of Homeland Security;

    ☒ connived or conspired, or took any other action, designed to prevent or hamper or with purpose of preventing or hampering your departure.

☒ At the time of the issuance of this Notice you remain subject to the final order of removal.

Upon the basis of the foregoing allegations, it is charged that you are in violation of the following provision(s) of law: **Section 274D of the Immigration and Nationality Act.**

**Wherefore,** pursuant to Section 274D of the Immigration and Nationality Act and Section 280 of title 8, it is the intention of ICE to **order you to pay a fine in the amount of** $303,620.00 .



Signature of Issuing Officer

Lisa Hoechst
Name of Issuing Officer

Enforcement Program Manager
Title of Issuing Officer

06/25/2019
Date

J 2713 Gellert  Digitally signed by J 2713 Gellert
Date: 2019.06.25 18:14:12 -04'00'

Signature of Reviewing Officer

J 2713 Gellert
Name of Reviewing Officer

Unit Chief
Title of Reviewing Officer

06/25/2019
Date

I.  You have the right to contest this Notice. If you desire to contest this Notice, you must:

   1.  Within 30 days from the service of this Notice, submit a written defense in duplicate, under oath, with documentary evidence setting forth the reasons why a civil penalty should not be imposed; AND

   2.  State whether a personal interview is requested; AND

   3.  Submit your written materials contesting this Notice and any request for a personal interview, in person or by certified mail to the following address:

   You may file a request for an extension to respond to this Notice. The extension request cannot be for more than 30 days. You must file the request for an extension either in person or by certified mail to the address contained in Section I. You must set forth the reasons for your request, and an extension will only be granted upon good cause being shown. You may request a personal appearance before the Issuing Officer named above, or with any immigration officer at this location. The appearance will be conducted pursuant to 8 C.F.R. § 280.13(b). You have the right to file a Motion to Reopen or a Motion to Reconsider an ICE order imposing a fine to the United States Department of Justice, Board of Immigration Appeals. If you file a motion to the Board of Immigration Appeals, an immigration officer may reopen or reconsider the initial ICE decision regarding this civil fine.

II.  If a written request for a personal interview or a written defense to this Notice is not received by the deadline to respond, the ICE Deciding Official will enter an order in the case and no appeal may be taken from this decision.

III.  If you request a personal interview, the interview will be conducted pursuant to 8 C.F.R. § 280.13(b). Any evidence in opposition to the imposition of the fine may also be presented at the personal interview.

IV.  After the conclusion of the personal interview or review of your written defense, if no personal interview is requested, the Issuing Officer will prepare a report for the ICE Deciding Official summarizing the evidence and his or her recommendation. The ICE Deciding Official will issue a written decision to you by mail.

V.  The ICE Deciding Official's decision can be appealed to the Board of Immigration Appeals as provided in Code of Federal Regulations, Title 8, Part 1003. The appeal must be filed with the ICE Deciding Official to the address contained in Section I within 30 days of service of the written decision.

VI.  You have a right to representation by counsel of your choice at no expense to the U.S. Government.

VII.  Any statement given may be used against you in these proceedings.

## Certificate of Service

Served by (print name)

Lisa Hoechst, Enf. Program Mgr.
Name and title of employee or officer

via certified mail
Place of service

06/26/2019
Date served

Signature of employee or officer

Person served (print name)

Signature of person served

☐ Refused to sign

Method of Service

☐ Personal Delivery

☐ Delivery to Respondent's Attorney

☐ Personal Delivery - Residence

☒ Certified / Registered Mail, Return Receipt Requested
TRACKING NUMBER:

# EXHIBIT F.4.

| From: | Cox, Bryan D |
|---|---|
| Sent: | 3 Jul 2019 17:53:20 +0000 |
| To: | #ICE OPA ERO Issue Paper |
| Subject: | ICE OPA: Washington Post and multiple local media outlets asking about (b)(6); (b)(7)(C) (b)(6), (b)(7)(C) - NC church sanctuary case who received one of the NIF civil fine letters |
| Attachments: | ES ERO ATL-(b)(6); (b)(7)(C) Media.doc |

## ISSUE:

The Washington Post and multiple North Carolina media outlets are inquiring about (b)(6); (b)(7)(C) (b)(6); (b)(7)(C) a final order criminal alien who has been in sanctuary at a church for more than a year. She is one of the aliens who recently received a NIF fine letter.

## STATEMENT: (Privacy cleared)

"U.S. Immigration and Customs Enforcement (ICE) initially encountered unlawfully present Honduran national (b)(6); (b)(7)(C) in October 2012 when ICE lodged a detainer for her following her arrest in Guilford County, North Carolina, on felony assault by strangulation and child abuse charges. She was convicted of assault and child abuse charges in May 2013. Following her release from state criminal custody, ICE arrested her on immigration violations in September 2013 and subsequently released her on bond after placing her into removal proceedings before the federal immigration courts. A federal immigration judge ordered Ms. (b)(6); (b)(7)(C) removed from the U.S. to Honduras in April 2017, and her appeal of that order was denied by the Board of Immigration Appeals in May 2017.

M (b)(6); (b)(7)(C) has received all appropriate process before the federal immigration courts and is subject to removal from the United States in accordance with federal law and judicial order."

EXTERNAL BACKGROUND:

ICE continues to focus its limited resources first and foremost on those who pose the greatest threat to public safety. ICE only conducts targeted enforcement and does not conduct any type of indiscriminate raids or sweeps that target aliens indiscriminately. The agency's arrest stats clearly reflect this reality. Nationally, approximately 90 percent of all persons arrested by ICE during FY18 either had a criminal conviction, a pending criminal charge, or were already subject to a removal order issued by a federal immigration judge.

The ICE sensitive locations policy, which remains in effect, provides that enforcement actions at sensitive locations should generally be avoided, and requires either prior approval from an appropriate supervisory official or exigent circumstances necessitating immediate action.

Federal law pertaining to the removal of unlawfully present foreign nationals has no statute of limitations. Unlawfully present foreign nationals are subject to arrest and removal regardless of how long they remain within a designated sensitive location. ICE cannot speculate as to how long an individual may choose to remain in a designated sensitive location, but removal orders do not expire and the individual would remain subject to arrest and removal at whatever point they exit said location.

## INTERNAL BACKGROUND:

# EXHIBIT F.5.

## Miller, Stephen EOP/WHO

| | |
|---|---|
| **From:** | Miller, Stephen EOP/WHO |
| **Sent:** | Tuesday, March 27, 2018 8:48 PM |
| **To:** | Hamilton, Gene (OAG) |
| **Cc:** | Zadrozny, John A. EOP/WHO; Gabriel, Robert EOP/WHO |
| **Subject:** | RE: is this correct? |

Remarkable

**From:** Hamilton, Gene (OAG) [mailto:Gene.Hamilton@usdoj.gov]
**Sent:** Tuesday, March 27, 2018 8:48 PM
**To:** Miller, Stephen EOP/WHO (b) (6) >
**Cc:** Zadrozny, John A. EOP/WHO (b) (6) >; Gabriel, Robert EOP/WHO
(b) (6) v>
**Subject:** Re: is this correct?

Up to $500 (now higher for inflation) per day, per alien under 274D.

Gene P. Hamilton
Counselor to the Attorney General
U.S. Department of Justice

On Mar 27, 2018, at 8:45 PM, Miller, Stephen EOP/WHO (b) (6) > wrote:

Understood

**From:** Hamilton, Gene (OAG) [mailto:Gene.Hamilton@usdoj.gov]
**Sent:** Tuesday, March 27, 2018 8:44 PM
**To:** Miller, Stephen EOP/WHO (b) (6)
**Cc:** Zadrozny, John A. EOP/WHO (b) (6) >; Gabriel, Robert EOP/WHO
(b) (6) >
**Subject:** Re: is this correct?

Just re-upping that each mention of AG in the statute actually refers to the Secretary post DHS
creation. But yes, it's reimbursed for the purposes below (iii).

(3) (A) The Secretary of the Treasury shall refund out of the Immigration Enforcement Account to
any appropriation the amount paid out of such appropriation for expenses incurred by the Attorney
General for activities that enhance enforcement of provisions of this title. Such activities include-

(i) the identification, investigation, apprehension, detention, and removal of criminal aliens;

(ii) the maintenance and updating of a system to identify and track criminal aliens, deportable aliens,
inadmissible aliens, and aliens illegally entering the United States; and



AMERICAN
OVERSIGHT

(iii) for the repair, maintenance, or construction on the United States border, in areas experiencing high levels of apprehensions of illegal aliens, of structures to deter illegal entry into the United States.

Gene P. Hamilton
Counselor to the Attorney General
U.S. Department of Justice

On Mar 27, 2018, at 8:40 PM, Miller, Stephen EOP/WHO (b) (6)        wrote:

> So the fines and penalties can PAY for wall construction?
>
> **From:** Hamilton, Gene (OAG) [mailto:Gene.Hamilton@usdoj.gov]
> **Sent:** Tuesday, March 27, 2018 8:39 PM
> **To:** Miller, Stephen EOP/WHO <(b) (6)
> **Cc:** Zadrozny, John A. EOP/WHO (b) (6)    >; Gabriel, Robert EOP/WHO <F(b) (6)
> **Subject:** Re: is this correct?
>
> The main ones are in INA 274C and 274D. Read INA 280 (8 U.S.C. 1330).
>
> Sec. 280. [8 U.S.C. 1330]
>
> (a) Notwithstanding any other provisions of this title, the withholding or denial of clearance of or a lien upon any vessel or aircraft provided for in section 231 , 234 , 243(c)(2) , 251 , 253 , 254 , 255 , 256 , 271 , 272 , or 273 of this title shall not be regarded as the sole and exclusive means or remedy for the enforcement of payments of any fine, penalty or expenses imposed or incurred under such sections, but, in the discretion of the Attorney General, the amount thereof may be recovered by civil suit, in the name of the United States, from any person made liable under any of such sections.
>
> (b) (1) 1/ There is established in the general fund of the Treasury a separate account which shall be known as the "Immigration Enforcement Account". Notwithstanding any other section of this title, there shall be deposited as

AMERICAN
OVERSIGHT

offsetting receipts into the Immigration Enforcement Account amounts described in paragraph (2) to remain available until expended.

(2) The amounts described in this paragraph are the following:

(A) The increase in penalties collected resulting from the amendments made by sections 203(b) and 543(a) of the Immigration Act of 1990.

(B) Civil penalties collected under sections 240B(d) , 274C , 274D , and 275(b) .

(3) (A) The Secretary of the Treasury shall refund out of the Immigration Enforcement Account to any appropriation the amount paid out of such appropriation for expenses incurred by the Attorney General for activities that enhance enforcement of provisions of this title. Such activities include–

(i) the identification, investigation, apprehension, detention, and removal of criminal aliens;

AMERICAN
OVERSIGHT

(ii) the maintenance and updating of a system to identify and track criminal aliens, deportable aliens, inadmissible aliens, and aliens illegally entering the United States; and

(iii) for the repair, maintenance, or construction on the United States border, in areas experiencing high levels of apprehensions of illegal aliens, of structures to deter illegal entry into the United States.

(B) The amounts which are required to be refunded under subparagraph (A) shall be refunded at least quarterly on the basis of estimates made by the Attorney General of the expenses referred to in subparagraph (A). Proper adjustments shall be made in the amounts subsequently refunded under subparagraph (A) to the extent prior estimates were in excess of, or less than, the amount required to be refunded under subparagraph (A).

(C) The amounts required to be refunded from the Immigration Enforcement Account for fiscal year 1996 and thereafter shall be refunded in accordance with estimates made in the budget request of the Attorney General for those fiscal years. Any proposed changes in the amounts designated in such budget requests shall only be made after notification to the Committees on Appropriations of the House of Representatives and the Senate in accordance with section 605 of Public Law 104-134.

(D) The Attorney General shall prepare and submit annually to the Congress statements of financial condition of the Immigration Enforcement Account, including beginning account balance, revenues, withdrawals, and ending account balance and projection for the ensuing fiscal year.

Gene P. Hamilton
Counselor to the Attorney General
U.S. Department of Justice

On Mar 27, 2018, at 8:31 PM, Miller, Stephen EOP/WHO
(b) (6) > wrote:

> Moreover, the civil fines and penalties in question go directly into the Immigration Enforcement Account, which DHS may use for enforcement purposes—including wall construction.

AMERICAN
OVERSIGHT

# EXHIBIT

# F.6.

**From:** Feere, Jon
**Sent:** 22 Dec 2017 22:00:33 -0500
**To:** 'Miller, Stephen EOP/WHO';'Zadrozny, John A. EOP/WHO';'Wetmore, David H. EOP/WHO';'Bash, Zina G. EOP/WHO'
**Subject:** RE: Progress updates (b)(5)
**Attachments:** (b)(5) doc

Attachment included.

---

**From:** Feere, Jon
**Sent:** Friday, December 22, 2017 9:58 PM
**To:** 'Miller, Stephen EOP/WHO'; Zadrozny, John A. EOP/WHO; 'Wetmore, David H. EOP/WHO'; 'Bash, Zina G. EOP/WHO'
**Subject:** Progress updates (b)(5)

Stephen et al. –

Here's an update on some of the progress this week on a number of fronts:

- (b)(5)

-

-

-

-



Page 461

Withheld pursuant to exemption

(b)(5)

of the Freedom of Information and Privacy Act



(b)(5)

Jon

**Jon Feere**
**Senior Advisor**
**U.S. Immigration and Customs Enforcement**
**Department of Homeland Security**

********This communication and any attachments may contain confidential and/or deliberative and/or law enforcement sensitive information.  It is not for release, review, retransmission, dissemination, or use by anyone other than the intended recipient. Any disclosure of this communication or its attachments must be approved by U.S. Immigration and Customs Enforcement. ********



**From:** [(b)(6); (b)(7)(C)]
**Sent:** 29 Dec 2017 09:22:32 -0500
**To:** Homan, Thomas
**Subject:** FW: Progress updates (ICE-HHS memo; fees; other items)

Tom:

Here is Jon providing a weekly report to [(b)(6); (b)(7)(C)] that neither you or I saw before he sent it.

Tom

**From:** [(b)(6); (b)(7)(C)]
**Sent:** Friday, December 22, 2017 11:34 PM
**To:** [(b)(6); (b)(7)(C)]
**Subject:** FW: Progress updates (ICE-HHS memo; fees; other items)

Since the DPC meeting was canceled this week, and since [(b)(6); (b)(7)(C)] wanted some updates from politicals, I gave him some info on what I've been up to in recent days as well as some info about some ICE efforts this week. Could have provided plenty more.

[(b)(6); (b)(7)(C)]

**From:** [(b)(6); (b)(7)(C)]
**Date:** Friday, Dec 22, 2017, 6:57 PM
[(b)(6); (b)(7)(C)]

**Subject:** Progress updates (ICE-HHS memo; fees; other items)

[(b)(6);] et al. –

Here's an update on some of the progress this week on a number of fronts:

- The ICE-HHS MOA on UAC/sponsors was sent by HHS to ICE last night. We've sent a near-final draft up to OGC for review. Simultaneously, we're cleaning up some minor language and plan to let HHS take a look next week before sending it through ExecSec. Barring any significant changes from OGC, we anticipate this moving very quickly up the chain.

- I convened and directed a meeting on the redrafting of the ICE-DOL MOA on deconfliction in worksite enforcement. ICE anticipates having an outline of what we want to see in a new MOA within the first two weeks of January. I've gamed this out with Wetmore and the goal is to have DPC direct ICE and DOL to come to an agreement on terms more favorable to ICE's mission. This would also be an opportunity for DPC to require DOL to mandate E-Verify use by any employer who is the subject of a labor dispute.

- I ensured that our S.F. op for the end of January is not limited to only ERO efforts, but also includes HSI's workplace equities. I spoke with one of our top ERO officials managing the op and he's pulling in employees from multiple Areas of Responsibility (e.g., Los Angeles, San Diego).



The only cause for concern is whether the CR will have an impact on staff relocation, but we'll cross that bridge if we come to it.

- The DHS E-Verify meeting (which I helped convene after seeing no action) is going to help advance the multiple proposals we presented to DPC months back. I raised a number of issues not on the list, including: USCIS's monthly report on E-Verify non-confirmations, some of which are flagged but not routinely sent to ICE for further investigation (the USCIS career pledged to work with ICE to make it happen); the above proposal that DOL require E-Verify sign-up as part of any labor dispute settlements. DHS Policy is writing up the next steps.

- I should finalize (tonight) our VOICE Office report on the effects of victimization of illegal immigration. It will include data on call volume and topics and include a number of anonymized case studies to highlight he positive impact the office is having. I'm happy to have DPC take a look before we send it up the chain. The goal is to release it in January.

- Working with an ERO colleague to iron out some issues with the DDOR; it appears that some of the entities which received a letter from the DOJ are not entities with which ICE would file a detainer request and that, for some, DOJ is looking at cooperation, generally. Either way, I anticipate giving DOJ a draft to look at within the next few weeks.

- Tasked a field office to investigate the immigration history of a New York-based Pakistani-born USC recently <u>charged</u> with supporting ISIS via Bitcoins. As per the previous e-mail, better coordination between DHS Privacy and Comms is going to be critical if we're to shape the narrative. I will always take the initiative in locating potentially-helpful storylines, but I can't do Comms's and Privacy's jobs for them.

- Other issues addressed this week included: Flagging for DPC an inquiry from the UN on the administration's implementation of the Executive Orders, TPS, and DACA; stopping a response to an Amnesty International inquiry on enforcement practices; helping WH speechwriters locate additional ICE officers/operations worth highlighting in speeches; assisting a Fox News contributor as well as a friendly NGO on messaging on the leaked proposal on separating families (you should see some discussion on Fox and NBC either tonight or tomorrow); getting the WH's Education SME to take a look at an F-1 related issue that may be allowing schools to take advantage of STEM policies by simply reclassifying a non-STEM degree as STEM -- the Dept of Education is supposed to be on top of this, but it appears they may not be.

- ICE also helped edit/refine the BOP report on criminal aliens to make it more consistent with our language.

- Last week you wanted someone to take a look at statutes that can be used to hold illegal aliens accountable. You may be interested in my report <u>"The Myth of the 'Otherwise Law-Abiding' Illegal Alien"</u> are a number of statutes that the average, working illegal alien is violating. After the intro and some background, you'll find a list of statutes and a brief explanation of each that includes the punishment options. Many are already routinely prosecuted. Others are difficult to prove and time-consuming, hence the general preference for ICE to simply clean up the problem via deportation.



And that brings me to an update on the fines and penalties directive in the Executive Order on interior enforcement. I should have noted at the outset that the most impactful area in fulfilling this (as far as ICE is concerned) is in the worksite enforcement context. ICE is certainly helping to fulfill this as evidenced by the Asplundh Tree fine of $95 million a few months back, a record for an immigration case.

After leaving the meeting on Friday, I went immediately to our COS and located our top attorneys to determine where we stand on other fines like 274D (Failure to Depart). Our legal team and our policy team informed me that (b)(5)

(b)(5)

(b)(5)

(b)(6); (b)(7)(C)

**Senior Advisor**
**U.S. Immigration and Customs Enforcement**
**Department of Homeland Security**

*******This communication and any attachments may contain confidential and/or deliberative and/or law enforcement sensitive information. It is not for release, review, retransmission, dissemination, or use by anyone other than the intended recipient. Any disclosure of this communication or its attachments must be approved by U.S. Immigration and Customs Enforcement. *******



# EXHIBIT F.7.

Alexander J. Hogan
Assistant U.S. Attorney
U.S. Attorney's Office for the Southern District of New York
86 Chambers Street, Third Floor New York, New York 10007
E-mail: alexander.hogan@usdoj.gov

> Re: *Austin Sanctuary Network, et al. v. U.S. Immigration and Customs Enforcement, No. 1:20-cv-01686-LJL*

Dear Alex,

Please find below Plaintiffs' proposed search terms for April 2020 Initial Production, as requested by ICE. In addition to these terms, we ask that ICE conduct any other searches they believe would result in records responsive to the priorities Plaintiffs' outlined in their March 27 letter, given ICE's superior knowledge regarding terms and search formats most likely to produce responsive records.

<u>Plaintiffs' Proposed Search Terms For April 2020 Initial Production:</u>

- "Araceli" and ("Velasquez Ramirez" or "Velasquez" or "Ramirez")
- "$511,360" or "511360"
- Park Hill United Methodist Church
- Temple Micah
- "Edith" and "Espinal"
- "$497,777" or "497777"
- Columbus Mennonite Church
- "Hilda" and "Ramirez"
- "$303,620" or "303620"
- St. Andrew's Presbyterian Church
- First Unitarian Universalist Church of Austin
- "Maria" and ("Chavalan-Sut" or "Sut" or "Chavalan")
- "$214,132" or "214132"
- Wesley Memorial United Methodist Church
- "Abbie" and ("Herrera" or "Arevalo")
- $295,630" or "295630"
- First Unitarian Universalist Church of Richmond
- "Vicky Chavez-Fino" or "Vicky Chavez"
- $453,832 or "453832"
- First Unitarian Church of Salt Lake City
- "Rosa Ortez-Cruz" or "Rosa Ortez" or "Rosa Cruz",
- "$314,007" or "314007"
- Church of Reconciliation in Chapel Hill
- Chapel Hill Mennonites Fellowship
- "Ingrid" and ("Encalada" or "Latorre" or "Encalada Latorre")
- "$5,000" or "5000"

- Unitarian Universalist Church of Boulder
- "National Sanctuary Collective" or "Sanctuary Collective"
- "Washington Times"
- ("Lisa" or "Hoechst") and ("fine" or "fines" or "sanctuary")
- "J 2713 Gellert" and ("civil fine" or "civil fines")
- "J 2713 Gellert" and "sanctuary" and ("fine" or "fines")
- "sanctuary" and ("fine" or "fines")
- ("Executive Order" or "EO" or "13768") and sanctuary
- "274d"
- "1324d"
- "Notice of Intention to Fine" or "I-79B" or "notice of intent"
- ("Withdraw" or "withdrawal" or "rescind") and civil and ("fine" or "fines")
- "230" and "sanctuary"

Please note that if we are not listing one or more of the nine individuals who received a fine while in sanctuary (as specified in the Washington Times article), please include those individuals in this search.

Best wishes,

/s/ Alina Das_____
Alina Das (AD8805)
Daniel T. Lee, Legal Intern
Lauren Wilfong, Legal Intern
Washington Square Legal Services
NYU Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, NY 10012
(212) 998-6467
alina.das@nyu.edu

Ghita Schwarz (GS9554)
Lupe Aguirre
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6445
gschwarz@ccrjustice.org

Counsel for Plaintiffs

# EXHIBIT F.8.

# U.S. Immigration and Customs Enforcement – Organizational Chart

Source: https://www.ice.gov/leadership/organizational-structure.

## Leadership



## Directorates

